**In re DES LITIGATION.**

**Deborah ASHLEY and Andrew Ashley,
Plaintiffs–Appellees,**

v.

**BOEHRINGER INGELHEIM
PHARMACEUTICALS,
Defendant–Appellant.**

**No. 1271, Docket 92–9074.**

United States Court of Appeals,
Second Circuit.

Argued June 22, 1993.

Decided Oct. 4, 1993.

John Budlong, Seattle, WA (Stafford, Frey, Cooper & Stewart, Seattle, WA, Edward Griffith, Katten, Muchin & Zavis, New York City, on the brief), for defendant-appellant.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND and ALTIMARI, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal primarily concerns the ability of a party that prevails on the merits to obtain appellate review of adverse interlocutory rulings. The issue arises on the appeal of defendant Boehringer Ingelheim Pharmaceuticals ("Boehringer") from the September 14, 1992, judgment of the District Court for the Eastern District of New York (Jack B. Weinstein, Judge) dismissing with prejudice the complaint of Debra and Andrew Ashley. Boehringer, the successor to a California manufacturer of diethylstilbestrol ("DES"), hopes by this appeal to challenge the District Court's April 13, 1992, interlocutory order that (a) upheld personal jurisdiction over Boehringer in New York and (b) applied to Boehringer New York substantive law on DES liability. *In re DES Cases*, 789 F.Supp. 552 (E.D.N.Y.1992). Boehringer contends that these rulings are unconstitutional or constitute erroneous interpretations of New York law. We conclude that the general rule prohibiting a prevailing party from appealing applies to this case, and dismiss the appeal.

## Background

Some background information concerning DES and the varying approaches to DES liability adopted by different states will assist in understanding Boehringer's motivation in attempting to appeal from the interlocutory rulings. Between 1941 and 1971, approximately 300 pharmaceutical companies marketed DES, a synthetic form of estrogen, for the prevention of miscarriages. In 1971, the FDA banned DES after determining that the drug caused vaginal adenocarcinoma, a form of cancer, and adenosis, a precancerous vaginal or cervical growth, in the daughters of women who took the drug. Although it was made in pills of different shapes and colors, all DES was chemically identical, and druggists generally filled prescriptions from whatever stock they had on hand. Most women ingesting DES did not know the identity of the manufacturer, and by the time their daughters realized they had been injured by DES, it was often impossible to determine the manufacturer.

Faced with this situation, the California Supreme Court adopted a "market share"

theory of liability. *See Sindell v. Abbot Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980). The Court held that a plaintiff could recover by showing that her injuries had been caused by DES and by joining as defendants "the manufacturers of a substantial share of the DES which her mother might have taken." *Id.* at 612, 163 Cal.Rptr. at 145, 607 P.2d at 937. Each manufacturer would "be held liable for the proportion of the judgment represented by its share of [the] market unless it demonstrates that it could not have made the product which caused plaintiff's injuries." *Id.* In a later case, the California Court clarified that liability was several only, with the consequence that if less than all manufacturers are joined, a plaintiff will recover less than 100 percent of her damages. *See Brown v. Superior Court (Abbott Laboratories),* 44 Cal.3d 1049, 245 Cal.Rptr. 412, 751 P.2d 470 (1988).

The New York Court of Appeals substantially adopted the *Sindell* approach. *See Hymowitz v. Eli Lilly and Co.,* 73 N.Y.2d 487, 541 N.Y.S.2d 941, 539 N.E.2d 1069, *cert. denied,* 493 U.S. 944, 110 S.Ct. 350, 107 L.Ed.2d 338 (1989). However, the Court of Appeals altered the *Sindell* approach in one significant respect, limiting a defendant's opportunity to exculpate itself from liability by showing that it could not have caused the plaintiff's injuries:

> To be sure, a defendant cannot be held liable if it did not participate in the marketing of DES for pregnancy use; if a DES producer satisfies its burden of proof of showing that it was not a member of the market of DES sold for pregnancy use, disallowing exculpation would be unfair and unjust. Nevertheless, because liability here is based on the over-all risk produced, and not causation in a single case, there should be no exculpation of a defendant who, although a member of the market producing DES for pregnancy use, appears not to have caused a particular plaintiff's injury. It is merely a windfall for a producer to escape liability solely because it manufactured a more identifiable pill, or sold only to certain drugstores. These fortuities in no way diminish the culpability of a defendant for marketing the product, which is the basis of liability here.

*Id.* at 512, 541 N.Y.S.2d at 950, 539 N.E.2d at 1078.

On September 30, 1991, a group of plaintiffs,[1] comprising women allegedly injured by DES, along with their husbands, filed the instant suit in the Eastern District of New York against 33 manufacturers, or successors to manufacturers, of DES. The plaintiffs, who are New York or foreign residents, asserted jurisdiction on the basis of diversity of citizenship. The sole appellant, Boehringer, is a Delaware corporation authorized to do business in New York. Boehringer never sold or manufactured DES, but it is the successor to Stayner Corporation, which manufactured limited amounts of DES in Berkeley, California, between 1949 and 1971. Stayner sold products in California, Washington, Oregon, and Montana. It never marketed any products in New York, was not licensed to do business in New York, and had no significant contacts with New York. Stayner's sales of DES were very small; the only years for which figures are available suggest that annual revenue from DES was about $5,000. In 1973, Stayner was acquired by Pharma–Investments, Ltd., a Canadian Corporation, and in 1979, Stayner was merged into Boehringer.

On October 25, 1991, Boehringer moved to dismiss for failure to state a claim and for lack of personal jurisdiction. Judge Weinstein denied the motion in his April 13, 1992, opinion. He concluded (1) that the New York long arm statute reached Boehringer, 789 F.Supp. at 569–73, 591; (2) that this exercise of jurisdiction was constitutional, *id.* at 573–89, 591–92; (3) that New York would apply its law to Boehringer, *id.* at 566–68, 590–91; (4) that application of this choice of law rule was constitutional, *id.* at 568–69,

---

1. The complaint names 21 plaintiffs, the caption on the brief names 31 plaintiffs, the caption of the District Court's opinion names 32 plaintiffs, the docket sheet names 19 plaintiffs, and Boehringer's brief states there are 16 plaintiffs. This uncertainty is illustrative of the lack of adversity accompanying the presentation of this appeal. Because we ultimately dismiss the appeal, the number and identities of the plaintiffs are immaterial.

591; (5) that the complaint stated a claim against Boehringer under New York substantive law, *id.* at 589–90; and (6) that New York substantive DES law was constitutional, *id.* at 565–66.

Boehringer initially filed a notice of appeal on May 26, 1992. At that time no final judgment had been entered, and Boehringer voluntarily withdrew the appeal at the suggestion of staff counsel. On September 14, 1992, apparently at Boehringer's request, the District Court entered a judgment that provides:

> [T]he case having been fully resolved as to all parties and claims by settlement or adjudication on the merits, It is OR-DERED AND ADJUDGED that all of the claims in this action, including specifically cross-claims, are DISMISSED, without costs, subject to the right of any party to re-open the final judgment if any settlement is not consummated.

At oral argument, Boehringer attempted to give a fuller explication of the procedural history behind this judgment. Boehringer stated that all the other defendant DES manufacturers settled with plaintiffs, but that Boehringer refused to do so. Trial then commenced against Boehringer, but the plaintiffs declined to present any evidence. The District Court then orally dismissed the complaint as to Boehringer for want of prosecution.

## Discussion

This appeal presents a threshold issue of appealability that implicates the related doctrines of standing and mootness. *See* Henry P. Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973) ("Mootness is ... the doctrine of standing set in a time frame...."). The only appellant is Boehringer, the defendant in the District Court. The plaintiffs have declined to contest Boehringer's appeal, neither filing a brief nor appearing for argument. Apparently their settlements with other defendants diminished their interest in attempting to establish Boehringer's liability.

The absence of any adversary to contest Boehringer's appeal raises an issue of mootness, which suggests that an appropriate disposition might be to declare the case moot and remand with directions to dismiss the complaint. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). But, though the lack of adversariness reenforces our ultimate unwillingness to accord the defendant standing to pursue this appeal, we are hesitant to rest our decision on grounds of mootness, since it is doubtful that a party, if otherwise entitled to appeal, can be defeated by its adversary's reluctance to join the fray.

It is the defendant's lack of standing that impels us to dismiss this appeal. Boehringer prevailed on the merits by successfully moving to have the plaintiffs' complaint dismissed with prejudice for lack of prosecution. Ordinarily, a prevailing party cannot appeal from a district court judgment in its favor. *See Cardinal Chemical Co. v. Morton International, Inc.,* — U.S. —, —, 113 S.Ct. 1967, 1973, 124 L.Ed.2d 1 (1993); *Lindheimer v. Illinois Bell Telephone Co.,* 292 U.S. 151, 176, 54 S.Ct. 658, 669, 78 L.Ed. 1182 (1934). There are, however, two exceptions to this rule. One exception arises when the prevailing party is aggrieved by the collateral estoppel effect of a district court's rulings. Boehringer observes that at least 42 DES cases are pending against it in New York, and states that it fears that the trial courts in these cases will accord preclusive effect to Judge Weinstein's jurisdictional and choice of law rulings. We disagree, however, that the matters resolved in the April 13 order have collateral estoppel effect. Relitigation of an issue in a second action is precluded only if "the judgment in the prior action was dependent upon the determination made of the issue." 1B James W. Moore, et al., *Moore's Federal Practice* ¶ 0.443[1], at 760 (2d ed. 1993). The judgment in this case is not dependent upon the interlocutory rulings in favor of the plaintiff. *See id.,* ¶ 0.443[5.–1], at 783 (judgment in favor of defendant on basis of plaintiff's contributory negligence not dependent on prior ruling that defendant was negligent). Upon the failure of the plaintiffs to prosecute their suit, the District Court was free to enter a judgment dismissing the complaint whether or not there was personal jurisdiction over

Boehringer and whether or not New York law applied to Boehringer.

■ Nevertheless, Boehringer contends that since the first of Judge Weinstein's interlocutory rulings was jurisdictional, it was a necessary first step leading to the final judgment, sufficient to confer standing to appeal. The notion that an adverse preliminary ruling may be appealed by a party that ultimately prevails on the merits so long as the preliminary ruling may be said to be a necessary step leading to the final judgment has not been generally asserted in the reported decisions, though it gains some support from dictum in *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954). In that litigation, a plaintiff-lessor sued to set aside the defendant-lessee's lease on the ground, among other things, that the lease was rendered illegal by the plaintiff's participation in an unlawful conspiracy. The District Court found that no conspiracy had existed and ruled in favor of the defendant's right to continued possession of the premises. In a somewhat curious footnote, the Supreme Court noted that though the defendant had not appealed from the dismissal of the complaint, "it might have" on the theory that "the conspiracy determination was essential for [defendant's] defense to [plaintiff's] claim." *Id.* at 99 n. 6, 74 S.Ct. at 420.[2]

Whether or not the "necessary step" argument would apply to confer appellate standing to a prevailing party who wished to challenge an adverse interlocutory ruling upholding subject matter jurisdiction,[3] it does not apply to an interlocutory ruling upholding personal jurisdiction. Lack of personal jurisdiction is a waivable defect. *See* Fed. R.Civ.P. 12(h)(1). Indeed, we have ruled that, even as to subject matter jurisdiction, a court may assume the existence of such jurisdiction and adjudicate the merits in favor of a defendant, without making a definitive ruling on jurisdiction. *See Browning–Ferris Industries v. Muszynski,* 899 F.2d 151, 159 (2d Cir.1990). Thus, Boehringer lacks appellate standing, even if the "necessary step" theory might be persuasive in other contexts.

■ Though we decline to accord appellate standing because Boehringer cannot avail itself of the collateral estoppel exception to the rule prohibiting appeal by a prevailing party, we note that our decision to decline appellate review of the District Court's order confirms the lack of any possible collateral estoppel effect arising from the District Court's interlocutory rulings.[4] *See Gelb v. Royal Globe Insurance Co.,* 798 F.2d 38, 45 (2d Cir.1986); *United States v. Cheung Kin Ping,* 555 F.2d 1069, 1076 (2d Cir.1977); *Restatement (Second) of Judgments* § 28(1) (1982) (relitigation of an issue not precluded if "party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action"). Thus, whether or not other trial judges find Judge Weinstein's opinion a persuasive precedent, *see also Broaddus v. Abbott Laboratories,* N.Y.L.J., June 23, 1992, at 22 (N.Y.Sup.Ct.

---

2. The dissent challenged this assertion, noting that "[t]he Court's opinion cites no case, in [the Supreme] Court or any other, holding that a successful party can appeal findings which are not inserted as part of the decree." *Partmar,* 347 U.S. at 109 n. 8, 74 S.Ct. at 425 n. 8 (Warren, C.J., dissenting). Moreover, the force of the dictum in the majority's opinion is substantially weakened by the fact that the defendant unquestionably had standing to bring an appeal from the dismissal of its counterclaim for damages based on the conspiracy, an appeal that it brought, only to lose on the ground of collateral estoppel. *Id.* at 100–103, 74 S.Ct. at 420–422.

3. *Olson v. Jacklowitz,* 74 F.2d 718 (2d Cir.1935), lends some support to the view that a prevailing defendant may appeal to challenge an adverse ruling upholding subject matter jurisdiction. In *Olson,* a defendant, found not liable by a jury,

appealed a judgment dismissing the suit for lack of diversity jurisdiction, the jurisdictional ruling having been made in a post-verdict motion. We entertained the appeal and affirmed. The opinion gives no indication that the standing of the defendant-appellant was challenged. Moreover, the appeal was contested because of a live controversy between the parties: the plaintiff was anxious to have an opportunity in state court to obtain a recovery from the defendant, and the defendant was anxious to prevent that opportunity by retaining the collateral estoppel effect of its federal court victory.

4. We note this only as a consequence of our decision to deny appellate standing; to deny standing *because* our dismissal eliminates a collateral estoppel effect would be circular reasoning.

1992), they are not bound to apply it in any subsequent litigation against Boehringer.

The second exception to the rule prohibiting appeal by a prevailing party arises, in some circumstances, where a prevailing party can show that it is aggrieved by some aspect of the trial court's judgment or decree. In *Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263 (1939), the District Court had entered a judgment for the defendant, finding that the defendant had not infringed the plaintiff's patent but also finding that the patent was valid. We dismissed the defendant's appeal, since the finding of validity did not support the decree and would not have estoppel effect. The Supreme Court reversed and held that we should have "entertain[ed] the appeal, not for the purpose of passing on the merits, but to direct the reformation of the decree." *Id.* at 242, 59 S.Ct. at 860. Judge Learned Hand later explained the Supreme Court's terse decision as follows:

> The Supreme Court did not differ with us in thinking that the finding [of validity] was immaterial, but nevertheless it directed us to strike it from the decree. The rationale of that decision was that the defendant was entitled to have it out because, although it was not an estoppel, it might create some presumptive prejudice against him.

*Harries v. Air King Products Co.*, 183 F.2d 158, 161 (2d Cir.1950) (footnote omitted).

*Electrical Fittings* is distinguishable in at least two ways. First, Boehringer's appellate brief does not ask us to vacate any portion of the *judgment*; what Boehringer seeks is a reversal of the interlocutory rulings. Though Boehringer suggested at oral argument that it wanted the judgment vacated, that contention is something of a ploy. Boehringer does not want to abandon the outcome that dismisses the plaintiffs' claim with prejudice. It verbalizes a request to vacate the judgment only to provide a basis to invite us to review the interlocutory rulings with which it disagrees. It is unlikely that, if we accepted the invitation and disappointed Boehringer by upholding Judge Weinstein's interlocutory rulings, Boehringer would be content with a remand that afforded the plaintiffs a renewed opportunity to prosecute their claims.

Second, and more importantly, the District Court's rulings on personal jurisdiction and choice of law do not appear on the face of the judgment, as was the case with the finding of validity in *Electrical Fittings*. The judgment in this case says only that the complaint is dismissed.[5] We therefore are confronted with an "appellant" that seeks no modification of the judgment as entered. In these circumstances, appellate jurisdiction is improperly invoked.

Accordingly, the appeal is dismissed. Boehringer's motion for a ruling on the merits is denied.

**5.** Boehringer also relies on *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), in which the Supreme Court allowed plaintiffs in a class action to appeal the District Court's denial of class certification notwithstanding the entry of judgment in the plaintiffs' favor after the defendants tendered to each plaintiff the full amount of statutory damages. Although the case states broadly that "[i]n an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III," *id.* at 334, 100 S.Ct. at 1171–72, the actual holding rests on the fact that, by not obtaining certification, plaintiffs would not be able to shift a portion of the costs of litigation to other members of the class, *id.* at 334 n. 6, 100 S.Ct. at 1172 n. 6. In this case a reversal of the preliminary rulings of the District Court would make no difference to any aspect of the financial consequences of this litigation.