OPINION OF THE COURT
GREENBERG, Circuit Judge.
I. INTRODUCTION
Karen Kralik appeals from the district court’s December 16, 1996 order entering summary judgment against her under the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act (“ADA”), 42 U.S.C. § 12101 et seq., and from the district court’s January 14, 1997 order denying her motion for reconsideration. The appellee, John Durbin, cross appeals from the portion of the December 16, 1996 order denying summary judgment as to one issue even though the order dismissed Kralik’s complaint. We will affirm the.orders granting summary judgment and denying the motion for reconsideration and will dismiss the cross appeal.
Kralik alleged in her complaint that she is an individual with a disability employed as a toll collector by the Pennsylvania Turnpike Commission, an instrumentality of the Commonwealth of Pennsylvania, at its Allegheny Valley Interchange. Durbin is Executive Director of the Commission so as a matter of convenience and reality we will refer to him as the “Commission.” Kralik asserted that she suffered a back injury in an automobile accident unrelated to her work. She further asserted that she sought from the Commission the reasonable accommodation of being relieved from forced overtime “as she cannot work for more than eight hours at a time” because of her injuries. The Commission, however, refused to grant the accommodation except on a temporary basis. After the Commission filed an answer, it moved for summary judgment on the grounds that Kra-lik is not a qualified individual with a disability and that, in any event, the Commission is not obligated to make the requested accommodation.[1]
In its opinion dated December 13, 1996, the district court noted that Kralik had worked for the Commission since 1988 as a toll collector and in 1990 had become a permanent Commission employee at the Allegheny Valley Interchange. Kralik was in a bargaining unit' represented by Teamsters Local Union No. 250. At all relevant times the union was a party to a collective bargaining agreement with the Commission which included the following overtime provision:
Section 11. In a twenty-four (24) hour operation, if the Commission experiences difficulty in obtaining a replacement for any work shift, they will call employees using the seniority system described here *78 in. If no employee accepts the assignment, it shall be offered by seniority to employees at the work site. In the event they refuse, the least senior employee, including any temporary employees in the needed job classifications, shall remain as the replacement. A temporary employee shall not be permitted to work overtime when a fulltime employee is ready, willing and able to perform the overtime work in question. Temporary Toll Collectors who are scheduled to work forty (40) hours or who have already worked forty (40) hours in a given work week are not to be asked to work a vacant shift unless all the Temporary Toll Collectors who are not scheduled to work nor have worked forty (40) hours and all the permanent Toll Collectors have refused to work the vacant shift. All hours worked by a Temporary Toll Collector will be counted towards the forty (40) hours requirement except those hours worked which were first offered to and refused by all eligible permanent Toll Collectors.
Scheduled work time must be adjusted to comply with the above.
A. Consistent with Article IX, in the event that overtime opportunities are refused by all employees, the overtime shift shall be assigned to the employee currently working with the least amount of seniority. This will be known as a ‘forced overtime assignment’.
The court observed that after two medical leaves of absence due to her back injury, Kralik on November 7, 1994, submitted a “Reasonable Accommodation Form” to the Commission requesting exemption from forced overtime requirements. Kralik subsequently filed a charge with the Equal Employment Opportunity Commission (“EEOC”) asserting that the Turnpike Commission had violated the ADA in not making an accommodation and that the union, Kralik, and the Commission later had entered into an agreement temporarily excusing her from being forced to work overtime. Then, as the court noted, she filed this action seeking relief under both the ADA and section 504 of the Rehabilitation Act, 29 U.S.C. § 794.
The court, citing Helen L. v. DiDario, 46 F.3d 325, 331 (3d Cir.), cert. denied, — U.S. -, 116 S.Ct. 64, 133 L.Ed.2d 26 (1995), held that the similarities between the two statutes permit a joint analysis of Kralik’s claims.[2] The court then explained:
[Ujnder either the ADA or the Rehabilitation Act, a plaintiff can state a claim for discrimination based upon her employer’s failure to accommodate her handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiffs disability and failed to provide such accommodation.
Slip op. at 6 (quoting Lyons v. Legal Aid Soc’y, 68 F.3d 1512, 1515 (2d Cir.1995)). For purposes of its summary judgment motion, the Commission agreed that it was subject to both the ADA and the Rehabilitation Act and had notice of Kralik’s alleged disability, yet sought summary judgment on the grounds that Kralik was not a qualified individual with a disability and could not, with or without reasonable accommodation, perform the essential functions of the job as a toll collector.
As the court noted, both the ADA and the Rehabilitation Act define “disability” as a “physical or mental impairment that substantially limits” one or more of the major life activities of the individual claiming to have a disability. 42 U.S.C. § 12102(2); 29 U.S.C. § 706(26). Major life activities include “functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working,” *79 29 C.F.R. § 1630.2(i), as well as “sitting, standing, lifting [and] reaching.” 29 C.F.R. § 1630 app.
After analyzing the record the court concluded as follows: (1) Kralik did not produce evidence that her ability to work, to engage in the major life activities of earing for herself or her house, to travel or engage in leisure activities, or to twist had been substantially impaired; but (2) there was a genuine dispute of fact as to whether Kralik’s ability to sit, stand, and stoop had been impaired. Thus, the court denied the Commission’s motion for summary judgment on the issue of whether Kralik was a qualified individual with a disability.
The court next considered the Commission’s alternate contention that Kralik’s claim could not succeed because the requested accommodation, exemption from the forced overtime provision, was not reasonable. In this regard the Commission pointed out that such an exemption could require the Commission to compel an employee with more seniority than Kralik to work overtime, forcing the Commission to infringe another employee’s seniority rights under the collective bargaining agreement.
The court cited various cases under the Rehabilitation Act and the ADA supporting a conclusion that a measure that violates a seniority system established in a collective bargaining agreement is not a “reasonable accommodation,” and thus is not required by the ADA. See Eckles v. Consolidated Rail Corp., 94 F.3d 1041, 1052 (7th Cir.1996) (discussed below), cert. denied, — U.S. -, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114 (8th Cir.1995) (“The ADA does not require that Northwest take action inconsistent with the contractual rights of other workers under a collective bargaining agreement.”); Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir.1995) (“An employer is not required to make accommodations that would violate the rights of other employees. Farmland Foods had no obligation to terminate other employees or violate a collective bargaining agreement in order to accommodate Wooten, even if it perceived him to have a substantial impairment.”) (citation omitted); Milton v. Scrivner, Inc., 53 F.3d 1118, 1124-25 (10th Cir.1995) (“An employer is not required by the ADA to reallocate job duties in order to change the essential function of a job. An accommodation that would result in other employees having to work[ ] harder or longer hours is not required.”) (citations omitted); Shea v. Tisch, 870 F.2d 786, 790 (1st Cir.1989) (“Consequently, we ... conclude that the postal service was not required to accommodate plaintiff further by placing him in a different position since to do so would violate the rights of other employees under the collective bargaining agreement.”); Carter v. Tisch, 822 F.2d 465, 467 (4th Cir.1987) (“Reassigning Carter to permanent light duty, when he was not entitled to one of a limited number of light duty positions, might have interfered with the rights of other employees under the collective bargaining agreement.”).
The court found that Kralik’s requested accommodation would infringe upon the legitimate seniority rights of other employees established in the collective bargaining agreement. The court then, for the very reason that the accommodation was temporary, rejected Kralik’s contention that the temporary agreement described above amounted to a concession that the requested accommodation is reasonable. See Shea, 870 F.2d at 789 & n. 4 (holding that employer was not required to institute permanent accommodation that would violate rights under collective bargaining agreement despite employer’s ability to maintain accommodation temporarily without compromising other employees’ rights). Thus, the court concluded that “regardless of Kralik’s ability to establish that one or more of her major life activities were substantially limited, the requested accommodation is not reasonable, in that it would require the Commission to violate the seniority rights of other employees as set forth in the collective bargaining agreement.” Consequently, the court granted the Commission summary judgment.
Subsequently, Kralik moved for reconsideration contending, as she explains in her brief, that there was “an agreement between the Teamsters and the ... Commission regarding the accommodation of another fare *80 collector [which] permits assigning [the collector] to a shift independently of the bidding process required by the collective bargaining agreement.” Br. at 5. The documentation attached to Kralik’s motion included a letter from the union to the Commission stating that as long as the other collector’s request is covered by and was reasonable under the ADA, the union would not object to the assignment of that collector and “will process no grievances concerning this matter.” App. at 93. The district court denied the motion for reconsideration as Kralik did not explain why she had not produced this evidence earlier.[3]
Kralik then appealed and the Commission cross appealed. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the order granting summary judgment but will review the order denying reconsideration on an abuse of discretion basis.
II. DISCUSSION
A. The appeal
Preliminarily we point out that Kralik does not question the district court’s joint analysis of her ADA and Rehabilitation Act claims. Thus, she does not contend that she might be entitled to relief under one act but not the other. Consequently, while we will focus our analysis primarily on the ADA, our analysis in this case applies equally to her Rehabilitation Act claim. The ADA provides that prohibited discrimination includes “not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.” 42 U.S.C. § 12112(b)(5)(A). Inasmuch as the district court held that there was a material dispute of fact as to whether she was a qualified individual with a disability, Kralik primarily challenges the district court’s determination that the Commission did not discriminate against her in violation of the ADA by failing to exempt her from the forced overtime provisions of her union’s collective bargaining agreement.
In urging us to reverse she points to 42 U.S.C. § 12112(b)(2), an ADA provision which provides that discrimination includes a covered entity’s:
participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity’s qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs).
She then argues that under both the Rehabilitation Act, as amended in 1991, and the ADA, an employer should consider making an accommodation by reassigning an employee. See Br. at 9 (citing Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir.1996)). She further contends that the Commission’s adherence to the forced overtime provision in the collective bargaining agreement violates the plain language of 42 U.S.C. § 12112(b)(2), and thus of the Rehabilitation Act, and that the legislative history of the ADA supports her position by establishing that an “ ‘entity mpy not do through a contractual provision what it may not do directly....’ ” Br. at 10 (quoting H.R.Rep. No. 485(11) 101st Cong., 2d Sess. 59-60 (1990)).
She also argues that EEOC guidelines favor a flexible approach wherein unions and employers “consult and work out an accommodation,” br. at 14, and maintains that the Commission could accommodate her by excusing her from forced overtime without undue hardship, difficulty or expense. Br. at 16. In fact, as Kralik emphasizes, the union and the Commission agreed on a temporary basis that the Commission would not force *81 Kralik to work overtime and, as she pointed out in her motion for reconsideration, the Commission with the union’s agreement accommodated another toll collector by assigning him to a shift without regard for the bidding process in the collective bargaining agreement. Furthermore, in practice the Commission rarely would need to assign Kra-lik to forced overtime. Indeed, at oral argument before this court Kralik indicated that during the pendency of this litigation the Commission never has required her to work forced overtime. She also contends that the cases relied on by the district court and cited above are either factually distinct or incorrectly decided. Br. at 17-19.
In considering the merits of this appeal we reiterate that the accommodation Kralik seeks would require the Commission to violate the collective bargaining agreement. Nevertheless, we agree with her that the collective bargaining agreement is not necessarily decisive because the union and the Commission together may modify the agreement as they did on a temporary basis by relieving her from forced overtime. But Kralik points to nothing in the record to support a contention that the union has communicated to the Commission a willingness to waive the forced overtime provision with respect to her as long as she is a qualified individual with a disability.[4] Rather, she refers to a letter to her by the secretary-treasurer of her union stating that “it may be possible to waive[the forced overtime] provision if it can be shown that your injury qualifies you under the [ADA].” App. at 82-83. Of course, a union waiver of the forced overtime provision would vitiate the Commission’s argument that it could not accommodate Kralik without violating the agreement. Unfortunately for Kralik, however, the union has not given the Commission such a waiver. Accordingly, the issue before us is clear: is the accommodation Kralik seeks unreasonable because it would require the Commission to infringe on the seniority rights of other employees in the collective bargaining agreement?[5]
On this point we follow Eckles, 94 F.3d 1041, which is a compelling precedent. In that case Eckles, who suffered from epilepsy, sought from his employer, Conrail, an accommodation consisting of an assignment to a position appropriate for his disability. The difficulty with his request was that it would have required Conrail to infringe on the seniority rights of other employees under the collective bargaining agreement. Id. at 1043. Thus, while Conrail did not contend that the accommodation would place an undue burden on it, it argued that the accommodation simply was not required “due to its effects on the legitimate seniority rights of other employees.” Id. at 1045. Accordingly, the issue in Eckles was: “whether the ADA requires as ‘reasonable accommodation’ that a disabled individual be given special job placement ... in violation of a bona fide seniority system in place under a collectively bargained agreement, when such accommodation is the only way of meeting the job restrictions of that disabled individual.” Id. at 1045-46.
The Eckles court pointed out that the case posed “a conflict not so much between the rights of the disabled individual and his employer and union, but between the rights of the disabled individual and those of his coworkers.” Id. at 1046. The court also observed that the applicability of 42 U.S.C. § 12112(b)(2), which Kralik invokes and which prohibits discrimination brought about through participation in contractual relationships, depended in that case on establishing a violation of section 12112(b)(5)(A), since the only form of discrimination alleged there, as here, was the failure to provide a reasonable accommodation. Thus, if reasonable accommodation “does not require reassignment to *82 a position held by another employee, the collective bargaining agreement at issue did not subject Eckles to prohibited discrimination by establishing a bona fide seniority system that regulates the holding of positions at Conrail.” Eckles, 94 F.3d at 1046.
The court acknowledged that a covered entity cannot avoid its ADA duties by contractual manipulation. But inasmuch as Eckles did not claim that “the seniority system was established, even in part, in order to bypass the duty to accommodate” a qualified individual with a disability under the ADA, there was “no evidence of ... subterfuge.” Id. The court then observed that:
if the ADA does not require that collectively bargained seniority rights be compromised in order to reasonably accommodate a disabled individual, Eckles cannot establish that Conrail and the Union are guilty of participating in a contractual arrangement that has the effect of subjecting him to prohibited discrimination. Hence the issue is simply what is required by ‘reasonable accommodation.’
Id. at 1046.
The court recognized that although the accommodation Eckles sought did not require firing of other employees, “what would be lost to the other employees, particularly more senior employees, would be some of the value of their seniority with the company, not their employment.” Id. at 1047. The court held that even this limited infringement on other employees’ seniority rights was not reasonable under the ADA, and pointed out that:
courts have been unanimous in rejecting the claim that ‘reasonable accommodation’ under the Rehabilitation Act requires reassignment of a disabled employee in violation of a bona fide seniority system. In fact, a virtual per se rule has emerged that such reassignment is not required under the Rehabilitation Act’s duty to reasonably accommodate.
Id. (citations omitted). Thus, the Eckles court explained that Congress adopted the ADA against “the backdrop of well established precedent that ‘reasonable accommodation’ under the Rehabilitation Act had never been held to require trumping the seniority rights of other employees.” Id. at 1048.
In concluding its comprehensive discussion, the Eckles court held that “[ajfter examining the text, background, and legislative history of the ADA duty of ‘reasonable accommodation,’ we conclude that the ADA does not require disabled individuals to be accommodated by sacrificing the collectively bargained, bona fide seniority rights of other employees.” Id. at 1051. While the court recognized “that many of the ‘reasonable accommodations’ specifically proposed within the ADA also have effects on other workers,” it found that “collectively bargained seniority rights have a pre-existing special status in the law and that Congress to date has shown no intent to alter this status by the duties created under the ADA.” Id. at 1052.
Eckles is convincing and is in harmony with the other precedents we cite above. Thus, we, like the Fifth Circuit Court of Appeals, will follow it. See Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir.1997) (“Following the other circuits which have considered this issue, we hold that the ADA does not require an employer to take action inconsistent with the contractual rights of other workers under a collective bargaining agreement.”).[6] In doing so we recognize that in Eckles the proposed infringement on other employees’ seniority rights was far more intrusive than the infringement at issue here. Yet the lesser degree of infringement on other employees’ seniority rights does not distinguish adequately this *83 case from Eckles, which recognized the principle at stake here: an accommodation to one employee which violates the seniority rights of other employees in a collective bargaining agreement simply is not reasonable.
Requiring an employer to violate the collective bargaining agreement in situations where the employer regards the infringement on seniority rights as insubstantial and the accommodation reasonable unfairly would expose the employer to potential union grievances as neither the union nor the arbitrator hearing a grievance would be required to disregard violations of the collective bargaining agreement. Thus, a rule requiring an employer to violate seniority rights would subject the employer to the cost of defending itself against grievances as well as to the risk that it might be subject to a costly remedy. Accordingly, even minor infringements on other employees’ seniority rights impose unreasonable burdens on employers who, by reason of those infringements, must face the consequences of violating the collective bargaining agreement.
In this regard, we point out that, for reasons we do not know, the union apparently did not agree that the Commission could relieve Kralik from forced overtime for the duration of her status as a qualified individual with a disability. While Kralik seemed to contend at oral argument that the union would agree to such an arrangement if she established that she was a qualified individual with a disability who needed the accommodation, as we indicated above she points to nothing in the record to demonstrate that the union ever expressed to the Commission its willingness to extend the temporary agreement we have described.[7]
What makes the requested accommodation in this case unreasonable is not that it would disrupt the Commission’s operations because we cannot say that it would do so. Rather, the requested accommodation is unreasonable because it would require the employer to violate its collective bargaining agreement and run the risks that the violation entails. Accordingly, we reject Kralik’s suggestion that an accommodation which requires an employer to violate a collective bargaining agreement may impose virtually no hardship on the employer. In short, it is appropriate for the union, rather than the employer, to make the determination that the infringement is justifiable by releasing the employer from its obligation to follow the seniority provisions of the collective bargaining agreement to accommodate a qualified individual with a disability.[8]
At oral argument before us the Commission suggested that even if the union were willing to waive the forced overtime provision with respect to Kralik, because of the Commission’s personnel needs it might not be able to accommodate Kralik by excusing her from forced overtime.
Obviously we need not explore that claim, which the Commission apparently did not advance in the district court. We also point out that our decision does not necessarily preclude Kralik from being excused from the forced overtime provisions as the union in the future might assure the Commission that it will agree to the Commission’s relieving Kralik from those provisions if she is a qualified individual with a disability who needs the accommodation. Such a waiver would eliminate the basis for our conclusion that the accommodation Kralik seeks is not reasonable, leaving for determination the question of whether Kralik is a qualified individual *84 with a disability who would be entitled to be relieved from forced overtime as a reasonable accommodation.
In light of our conclusions we will affirm the order for summary judgment entered December 16, 1996. Moreover, it is clear that the district court did not abuse its discretion in denying the motion for reconsideration, either on the grounds that the new material Kralik presented could not have affected the outcome of the case in the district court any more than it has here, see Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985), or on the separate grounds that Kralik offered no justification for her untimely presentation of the material. Consequently, ■ we also will affirm the order entered January 14, 1997, denying the motion for reconsideration.
B. The cross appeal
The final issue that we address is the Commission’s contention that the district court erred in denying its motion for summary judgment on the question of whether Kralik was a qualified individual with a disability. The Commission recognizes its apparent lack of standing to appeal and acknowledges “that in the normal course a party must be aggrieved by the final judgment of the district court which it seeks to challenge.” Br. at 16. In fact, it even cites cases supporting the principle, namely Deposit Guar. Nat’l Bank v. Roper, 445 U.S. 326, 333-34, 100 S.Ct. 1166, 1171-72, 63 L.Ed.2d 427 (1980), and Watson v. City of Newark, 746 F.2d 1008, 1010 (3d Cir.1984). Yet it contends that courts “have permitted an appeal from a seemingly favorable disposition when adverse practical consequences, not normally contemplated by legal theory or policy considerations, manifest themselves.” Br. at 16. On this point the Commission contends that the denial of summary judgment has prejudiced it in an EEOC proceeding, which Kralik brought against the Commission and the union after the district court denied her motion for reconsideration, alleging retaliation for her having brought this action, and discrimination based on her disability and her sex.
We are satisfied that even if in some cases a completely successful party might have standing to appeal, this is not such a case. In its partial denial of the Commission’s motion for summary judgment, the district court merely held that at a particular time based on the record before it there was a dispute of fact as to whether Kralik was a qualified individual with a disability. While we certainly understand why the Commission would like a ruling that Kralik was not a qualified individual with a disability at that time, the district court’s inherently tentative conclusion, though unhelpful to the Commission, is not harmful to it either, because the conclusion does not preclude the Commission from rejecting a new accommodation sought by Kralik or from prevailing in any challenge to that rejection on the grounds that she is not a qualified individual with a disability.[9] The Commission has failed to identify sufficient adverse consequences of the order from which it cross appeals to confer standing to appeal. See In re DES Litig., 7 F.3d 20, 23-25 (2d Cir.1993) (dismissing appeal for lack of standing where appellant prevailed below and was not aggrieved by collateral estoppel effects or other prejudicial effects of determination below).
III. CONCLUSION
In view of the aforesaid, we will affirm the orders of December 16, 1996, and January 14, 1997, and will dismiss the cross appeal. The parties will bear their own costs on this appeal.

. It also urged that Kralik failed to exhaust the remedies provided in the collective bargaining agreement between her union, Teamsters Local Union No. 250, and the Commission, but that issue is no longer in the case so we make no further reference to it.

. As noted in Lyons v. Legal Aid Soc’y, 68 F.3d 1512, 1514-15 (2d Cir.1995), "[t]he Rehabilitation Act ... prohibits disability-based discrimination by government agencies and other recipients of federal funds....” The ADA has a broader scope as it defines a “covered entity” as "an employer, employment agency, labor organization, or joint labor management committee.” 42 U.S.C. § 12111(2). Certain employers, however, are not included within section 12111(2). See 42 U.S.C. § 12111(5).

. The court also indicated in denying the motion for reconsideration that Kralik “neither relied on the EEOC amicus brief in her earlier brief nor mentioned that the 7th Circuit rejected the argument therein.” We are uncertain why Kralik's failure to rely on the EEOC brief was germane to the motion but we believe that the reference to the Court of Appeals for the Seventh Circuit probably was to Eckles, 94 F.3d at 1050-52, which we cite above and discuss at great length below.

. In view of the EEOC charge Kralik brought against the union after the district court ruled against her, which we discuss below, we doubt that it did so.

. Kralik also argues that the requested accommodation does not place an undue burden on the Commission because of “the existence of provisions [in the collective bargaining agreement] for other workers to voluntarily perform [overtime].” Br. at 7. This observation does not support her case because the forced overtime provision by its terms applies only "in the event that overtime opportunities are refused by all employees.”

. Kralik relies heavily on Aka v. Washington Hosp. Center, 116 F.3d 876, 890-97 (D.C.Cir. 1997), reh’g en banc granted and judgment vacated, 124 F.3d 1302 (D.C.Cir.1997), which is inconsistent with Eckles and thus with the result we reach. Aka stated that "in some cases the degree of infringement imposed by a 'reasonable accommodation’ to one employee's disability on a 'right' held by other employees under the collective bargaining agreement may be extremely slight, and may impose virtually no 'hardship' at all,’’ and thus stated that it would be "inappropriate to draw blanket conclusions regarding whether the ADA can 'trump' provisions in collective bargaining agreements.” Id. at 896. Aka, however, has been vacated and in any event is inconsistent with Eckles, which we find to be soundly reasoned.

. According to Kralik the Commission has not applied the forced overtime provision to her during this litigation and yet the union has not instituted a grievance proceeding. While this may be true, it does not follow that the union will remain willing to refrain from grieving in the future. The union’s apparent acquiescence merely is a de facto continuation of the temporary agreement we describe above. We decline to hold that the Commission is required to accommodate Kralik for the duration of her disability as we cannot assume that the union’s acquiescence will continue indefinitely.

. We note, moreover, that if an employer grants an accommodation by violating seniority rights of other employees under the collective bargaining agreement, the employer in its operations may be making no accommodation at all. As the Eckles court recognized, the accommodation instead will be made by the disabled employee’s coworkers who will lose a benefit of their seniority status.

. We do not suggest that we could not have reviewed the part of the order denying summary judgment had we disagreed with the district court’s entry of summary judgment on the issues addressed in this opinion.