# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 6, 2012

No. 11-40305

Lyle W. Cayce
Clerk

TOM WORTHEN,

Plaintiff - Appellee

v.

FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE
COMPANY,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:09-CV-236

Before KING, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant Fidelity National Property and Casualty Insurance Company ("Fidelity") appeals the district court's ruling in favor of Appellee Tom Worthen ("Worthen") that he timely renewed his Standard Flood Insurance Policy (the "SFIP"). Because the district court committed error by concluding that Worthen timely paid his renewal premium as a matter of law, we REVERSE and RENDER.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40305

BACKGROUND

On August 10, 2007, Worthen obtained an SFIP for a residential property. Fidelity wrote Worthen's flood insurance policy. Coverage was provided under the National Flood Insurance Program (the "NFIP"), a federal program established by the National Flood Insurance Act of 1968, as amended, 42 U.S.C. § 4001 *et seq.* (the "NFIA"), and regulated by the Federal Emergency Management Agency ("FEMA").

Under Worthen's policy, his coverage period began at 12:01 a.m. on August 10, 2007 and expired at 12:01 a.m. on August 10, 2008. Fidelity sent a Renewal Notice dated June 17, 2008 and a Renewal Reminder Notice dated July 26, 2008, advising Worthen that his current SFIP would expire at 12:01 a.m. on August 10, 2008. The Notices also stated that if Worthen wanted to ensure continued coverage, he needed "to make [his] payment on or before the expiration date of [his] current policy." Fidelity then sent Worthen an Expiration Notice dated August 10, 2008, informing him that because Fidelity had not received his renewal premium, Worthen's coverage had expired on "8/10/08 at 12:01 a.m. standard time." However, the Expiration Notice also stated that if Fidelity received the "premium payment within 30 days of the expiration date indicated above [8/10/08], [Worthen's] policy should be renewed with no lapse in coverage." Worthen does not dispute that he received each of the aforementioned Notices.

On the morning of September 9, 2008, while Texas residents awaited Hurricane Ike's impending arrival, Worthen called his insurance agent regarding the renewal of his SFIP. Some time between 8:37 a.m. and 9:22 a.m., Worthen paid the renewal premium. Then, at 9:22 a.m., Worthen's insurance agent forwarded Worthen a document entitled Endorsement Payment Transmittal that stated that the transaction date was "09/09/2008" and that the Effective Date of his renewed SFIP was "08/10/2008."

2

No. 11-40305

Four days later, on September 13, 2008, Hurricane Ike caused significant damage to Worthen's property. Shortly thereafter, Worthen filed a claim for flood damages, but Fidelity denied his claim on the grounds that there was no policy in effect to provide coverage. According to Fidelity, Worthen's SFIP renewal premium had not been paid within the 30-day grace period, thereby triggering FEMA's mandatory 30-day waiting period from the date of payment before coverage could be reinstated. Thus, Fidelity maintained that Worthen's policy was not effective until October 9, 2008, leaving him without coverage when Hurricane Ike damaged his property.

Subsequently, Worthen filed suit in state court against Fidelity and his insurance agent, Galveston Insurance Associates,[1] alleging breach of contract and various state-law-based extra-contractual and tort claims. Fidelity removed the action to federal court, and pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, 12(c), filed a motion to dismiss Worthen's state-law-based extra-contractual and tort claims on the grounds that these claims were barred and preempted by federal law.[2] At the same time, Fidelity also filed a motion for summary judgment arguing that Fidelity had properly denied Worthen's claim for federal benefits under his SFIP because Worthen's renewal payment was untimely since it was made after 12:01 a.m. on September 9, 2008.

The district court granted Fidelity's motion to dismiss. *Worthen v. Galveston Ins. Assocs.*, No. G-09-236, 2010 WL 3816044, at *3 (S.D. Tex. Sept. 14, 2010). In its Amended Memorandum and Order, the district court concluded that "there is no common law claim for insurance coverage that [Worthen] can

---

[1] Worthen later settled with Galveston Insurance Associates.

[2] Fidelity's motion to dismiss excluded Worthen's breach of contract claim for payments under the SFIP policy. Fidelity moved for summary judgment on that claim. Although Worthen never moved for summary judgment, the district court granted judgment to Worthen, apparently on the facts set forth in Fidelity's motion, Worthen's response, and a stipulation as to damages if the policy were in effect.

No. 11-40305

make that is not preempted under the facts of this case." *Id*. at *2-3. However, the district court also therein addressed the issue of the timeliness of Worthen's renewal premium payment. *Id*. at *1, *3. In that regard, the district court held that because Worthen made his renewal payment on September 9, 2008, he qualified for continuation of his SFIP without a lapse in coverage. *Id*. at *3 ("Fidelity issued its 'Endorsement Payment Transmitt[al]' on September 9, indicating receipt of [Worthen's] payment of $600. That was the 30th day and a premium payment made on the 30th day is timely."). Having so held, the district court further concluded that Worthen had "no procurement claim(s) since he had coverage," so that his "asserted procurement claims are, therefore, preempted." *Id*. (citation omitted).

Based on its determination that Worthen's renewal premium payment had been timely, the district court denied Fidelity's motion for summary judgment and entered Final Judgment in favor of Worthen in the amount of $25,972.15 on his claim for federal benefits under his SFIP.

Fidelity timely appealed. Worthen did not cross-appeal.

DISCUSSION

Given the above undisputed facts, the question of whether Worthen's renewal premium payment was timely is a question of law that this court reviews *de novo*. *E.g., Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *Atlas Pallet, Inc. v. Gallagher,* 725 F.2d 131, 134-35 (1st Cir. 1984) ("Generally, where the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law for the court to decide." (citations omitted)).

*1.    Timeliness of Worthen's Renewal Premium Payment*

Since the instant case involves an SFIP, this court applies federal law to the issue, not the statutory or decisional law of any particular state, although

general principles of state insurance law may be useful in determining federal law. *E.g., Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009); *Linder & Assocs., Inc. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 550 (3d Cir. 1999) ("It is well settled that federal common law governs the interpretation of the SFIP at issue here." (citations omitted)); *Sodowski v. Nat'l Flood Ins. Program*, 834 F.2d 653, 655 (7th Cir. 1987) ("Federal common law controls the interpretation of insurance policies issued pursuant to the National Flood Insurance Program (NFIP)." (citations omitted)).   For example, where appropriate, we have interpreted policies by using general principles of state insurance law, including but not limited to the following: (1) if the language of a policy is clear and unambiguous, it is accorded its natural meaning; (2) if the meaning of a policy provision is susceptible to different constructions, the one most favorable to the insured prevails; (3) insurance contracts are to be reasonably construed in accordance with the objective and intent of the parties; (4) in determining the most reasonable construction of contested provisions, the court may draw from the provisions, the policy as a whole, and the apparent objectives of the parties in entering the contract; and (5) in the end, if the meaning of the policy terms remains unclear, the policy is generally construed in the insured's favor to promote the policy's objective of providing coverage.   *See Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984) (internal citations and quotations omitted).

In addition, since SFIPs are issued pursuant to the FEMA-administered NFIP, *see* 42 U.S.C. § 4011(a), Worthen's SFIP is also governed by FEMA's flood insurance regulations and the NFIA. *E.g., Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *Hanover Bldg. Materials*, 748 F.2d at 1011-12; 44 C.F.R. Pt. 61, App. A(1), Art. IX ("This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the [NFIA], and Federal common law."). Moreover,

No. 11-40305

FEMA's interpretation of its own regulations is given "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Stinson v. United States*, 508 U.S. 36, 45 (1993) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).

Furthermore, "provisions of an insurance policy issued pursuant to a federal program [are] strictly construed and enforced." *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998) (footnote omitted); *see also* 44 C.F.R. § 61.13. In addition, the insured is charged with constructive knowledge of the policy provisions and of the NFIP program "regardless of actual knowledge of what is in the [r]egulations or of the hardship resulting from innocent ignorance." *Fed. Crop. Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947).

Here, the relevant and contested provision in Worthen's SFIP, which is codified in the federal regulations, is the policy renewal provision:

1. This policy will expire at 12:01 a.m. on the last day of the policy term.
2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.[3]

44 C.F.R. Pt. 61, App. A(1), Art. VII(H)(1)-(2). Worthen contends that this provision is ambiguous because there is no suggestion of the specific date and time that serves as the renewal premium payment deadline. In addition, Worthen argues that FEMA's own NFIP Flood Insurance Manual (the "Manual") exacerbates the ambiguity by the use of the term "after" in the Policy Renewals section:

III. PREMIUM PAYMENT DUE

---

[3] Although the SFIP does not explicitly label this as a "grace period," for the purposes of this case, it is undisputed that this 30-day period acts as such to retroactively permit expired policies to be re-activated without any lapse in coverage. *See Campo*, 562 F.3d at 752 n.1.

6

No. 11-40305

> To ensure that the policy is renewed without a lapse in coverage, the premium must be received by the NFIP within 30 days after the expiration date.

FEMA, National Flood Insurance Program Flood Insurance Manual (May 2008), http://www.fema.gov/pdf/nfip/manual200805/12ren.pdf. According to Worthen, the use of the word "after" suggests that the date that a policy expires is not counted so that the insured has 30 days after and not inclusive of the actual expiration date. Furthermore, Worthen argues that in the same Policy Renewals section, it provides that the insured should "[u]se the renewal date plus 29 days to determine if the renewal premium was received within 30 days." According to Worthen, the phrase "renewal date" in this calculation method is susceptible to multiple, conflicting meanings when considered in light of the other parts of the Manual's Policy Renewals section.

However, reading further in the Manual demonstrates the fallacy of Worthen's arguments:

### V.     RENEWAL EFFECTIVE DATE DETERMINATION

> If the Final Notice and the premium payment are received by the insurer within 30 days following the expiration, the policy will be issued under the same policy number as the previous term, with no lapse in coverage. For example, if the policy expires on May 1, the Final Notice and premium payment must be received on or before May 30.

*Id.* Applying the Manual's calculation method—"[u]se the renewal date plus 29 days to determine if the renewal premium was received within 30 days"—May 1st is the renewal date and May 30th is the 29th day after May 1st.

Here, it is undisputed that without a renewal premium payment, Worthen's SFIP expired at 12:01 a.m. on August 10, 2008. Thus, applying the Manual's example and counting method to Worthen's scenario, Worthen's renewal premium must have been received on or before the 29th day after August 10, 2008—in other words, Worthen's payment must have been received

7

No. 11-40305

by September 8, 2008. Accordingly, Worthen's renewal premium payment after 12:01 a.m. on September 9, 2008 was outside the 30-day grace period and was untimely. Consequently, there was a lapse in coverage when Hurricane Ike damaged Worthen's property.

The example provided by FEMA's Manual resolves any potential ambiguity. We conclude that the district court's determination that Worthen's renewal premium was timely was error, and we must REVERSE the grant of judgment to Worthen on his claim under the SFIP.

### 2. *Unavailability of Remand*

Worthen requests that in the event we reverse, we remand rather than render so that he may pursue litigation in the district court of his state-law-based claims he calls "procurement claims." He argues that the district court's dismissal of these claims was based upon its (now concluded to be erroneous) conclusion that his renewal premium payment was timely so that he had coverage. Worthen further argues that "absent the lower court's finding of SFIP coverage, the state-law claims would have certainly survived."

Worthen's request exceeds our jurisdiction because of his failure to cross-appeal. This court's scope of review is limited to the issues that were timely appealed. *See* FED. R. APP. P. 3-4; *Greenlaw v. United States*, 554 U.S. 237, 244-45 (2008) ("[A]n appellate court may not alter a judgment to benefit a nonappealing party. . . . [I]t takes a cross-appeal to justify a remedy in favor of an appellee." (citation omitted)); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316-17 (1988) ("[A]lthough a court may construe the Rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown' under Rule 2, if it finds that they have not been met." (footnote omitted)). Except in limited circumstances not applicable here, failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Amazing Spaces, Inc. v. Metro Mini*

8

No. 11-40305

*Storage*, 608 F.3d 225, 250 (5th Cir. 2010) ("'[T]his circuit follows the general rule that, in the absence of a cross-appeal, an appellate court has no jurisdiction to modify a judgment so as to enlarge the rights of the appellee or diminish the rights of the appellant.'" (quoting *Borrego Springs Bank v. Skuna River Lumber* (*In re Skuna River Lumber, LLC*), 564 F.3d 353, 356 (5th Cir. 2009))).

Worthen's request that this court remand the case to the district court for litigation of the dismissed claims in the event of reversal is a request that the appellate court enlarge his rights and/or diminish Fidelity's rights.[4] *See Morley Constr. Co. v. Md. Cas. Co.*, 300 U.S. 185, 191-92 (1937) ("'Where each party appeals[,] each may assign error, but where only one party appeals the other is bound by the decree in the court below, and he cannot assign error in the appellate court, nor can he be heard if the proceedings in the appeal are correct, except in support of the decree from which the appeal of the other party is taken.'" (quotation omitted)). Accordingly, we lack jurisdiction to grant Worthen a remand on his state-law-based claims.[5]

---

[4] Citing *Klamath Strategic Investment Fund v. United States*, 568 F.3d 537 (5th Cir. 2009) and *Ashley v. Boehringer Ingelheim Pharmaceuticals* (In re *Des Litigation*), 7 F.3d 20 (2d Cir. 1993), Worthen argues that since he was not aggrieved by the lower court's decision, he did not have standing to appeal it. However, in making this argument, Worthen appears to conflate two distinct concepts. Specifically, "[a]s a general matter, a party who is not aggrieved by a judgment does not have standing to appeal it." *Klamath Strategic*, 568 F.3d at 546 (citing *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 603 (5th Cir. 2004)). However, this well-established rule is separate and apart from the "longstanding" cross-appeal rule. *Greenlaw*, 554 U.S. at 244-45. If Worthen sought only to uphold the district court's judgment under the policy by making arguments that the district court rejected, he would not need to cross-appeal. However, he is now seeking to overturn the district court's dismissal of his state-law-based claims, a ruling adverse to him and by which he is "aggrieved," even though he would have been satisfied with the overall outcome were we to leave it undisturbed. By requesting remand for that purpose, Worthen seeks to have this court alter the district court's judgment to enlarge his rights and/or diminish Fidelity's. Thus, Worthen's request is a quintessential request that requires a cross-appeal: "If you leave the district court's ruling as is, I am happy, but if you reverse the judgment on the policy, then reverse the dismissal of my state-law claims."

[5] We note that these claims appear to be based on nothing more than speculation and conjecture. Worthen contends that he was misled by the issuance of renewal papers on

No. 11-40305

Therefore, we REVERSE the judgment of the district court in favor of Worthen and RENDER judgment that he take nothing against Fidelity.

REVERSED and RENDERED.

---

September 9 showing no lapse in coverage.  He points to no evidence that, with Hurricane Ike bearing down on the coast, he could have obtained other coverage that day or in the ensuing few days before the hurricane hit.  *See, e.g., Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App.—Fort Worth 2006, pet. denied) ("Insurance is designed to protect against unknown, fortuitous risks, and fortuity is a requirement of all policies of insurance.  An insured cannot insure against something that has already begun and which is known to have begun." (citations omitted)).