Stein v. KPMG

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: November 21, 2006          Decided: May 23, 2007)

Docket No. 06-4358-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFFREY STEIN, MARK WATSON, PHILIP WIESNER, RANDALL BICKHAM, LARRY DELAP, JEFFREY EISCHEID, DAVID GREENBERG, STEVEN GREMMINGER, CARL HASTING, JOHN LANNING, JOHN LARSON, ROBERT PFAFF, GREGG RITCHIE, RICHARD ROSENTHAL, RICHARD SMITH, and CAROL G. WARLEY,

     Plaintiffs-Appellees,

- v. -

KPMG, LLP,

     Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  WINTER, HALL, Circuit Judges, and GLEESON,[*] District Judge.

Appeal from the exercise of ancillary jurisdiction in a criminal tax fraud prosecution by the United States District Court for the Southern District of New York (Lewis A. Kaplan, Judge) over a state law contractual claim for attorneys' fees, and from denial of a motion to compel arbitration under the

---

[*]The Honorable John Gleeson, of the United States District Court for the Eastern District of New York, sitting by designation.

Federal Arbitration Act.  This assertion of jurisdiction was intended to provide a remedy for Fifth and Sixth Amendment violations found by the court.  We treat the appeal as a petition for a writ of mandamus and grant the petition.  We vacate the order asserting ancillary jurisdiction as beyond the district court's power.

SHEILA L. BIRNBAUM, Skadden, Arps, Meagher & Flom LLP, New York, New York (Barbara Wrubel, J. Russell Jackson, Preeta D. Bansal, Haydan A. Coleman, Skadden, Arps, Meagher & Flom LLP, New York, New York, Amy Sabrin, Skadden, Arps, Meagher & Flom LLP, Washington D.C., Charles A. Stillman, Stillman, Friedman & Shechtman, P.C., New York, New York, on the brief), for Defendant Appellant.

DAVID SPEARS, Spears & Imes LLP, New York, New York, for Plaintiffs-Appellees Jeffrey Stein and John Lanning.

RONALD E. DEPETRIS, DePetris & Bachrach, LLP, New York, New York (Marion Bachrach, on the brief), for Plaintiff-Appellee Richard Smith.

John A. Townsend, Townsend & Jones, LLP, Houston, Texas, on the brief, for Plaintiff-Appellee Carol G. Warley.

David C. Scheper, Overland Borenstein Scheper & Kim LLP, Los Angeles, California, on the brief, for Plaintiff-Appellee Robert Pfaff.

John F. Kaley, Doar Rieck Kaley & Mack, New York, New York, on the brief, for Plaintiff-Appellee Steven Gremminger.

David C. Smith, McNamara Spira & Smith, Los Angeles, California, on the brief, for Plaintiff-Appellee Gregg Ritchie.

Leonard F. Lesser, Simon Lesser P.C., New York, New York, on the brief, for Plaintiff-

2

Appellee David Greenberg.

Diana D. Parker, Law Offices of Diana D. Parker, New York, New York, on the brief, for Plaintiff-Appellee Larry DeLap.

Michael S. Kim, Kobre & Kim LLP, New York, New York, on the brief, for Plaintiff-Appellee Mark Watson.

Marc A. Fenster, Russ, August & Kabat, Los Angeles, California, on the brief, for Plaintiff-Appellee Randall Bickham.

Stanley S. Arkin, Arkin Kaplan Rice LLP, New York, New York, on the brief, for Plaintiff-Appellee Jeffrey Eischeid.

Robert S. Fink, Kostelanetz & Fink, LLP, New York, New York, on the brief, for Plaintiff-Appellee Richard Smith.

Stephen Willey, Savitt & Bruce LLP, Seattle, Washington, on the brief, for Plaintiff-Appellee John Larson.

Susan R. Necheles, Hafetz & Necheles, New York, New York, on the brief, for Plaintiff-Appellee Richard Rosenthal.

Russell M. Gioiella, Litman, Asche & Gioiella, New York, New York, on the brief, for Plaintiff-Appellee Carl Hasting.

WINTER, Circuit Judge:

This appeal is an offspring of a criminal tax fraud prosecution. In the course of the criminal prosecution, Judge Kaplan asserted ancillary jurisdiction over a state law contract claim brought against KPMG, LLP, by sixteen of the defendants in the criminal case, all former partners and employees of KPMG, seeking to force it to pay their legal expenses. KPMG appeals

3

from the decision allowing the ancillary proceeding and from the denial of its motion to compel arbitration of the contract claim. Construing KPMG's appeal as a petition for writ of mandamus, we grant the petition. We vacate the order of the district court asserting ancillary jurisdiction over the contract claim as beyond the district court's power. The issues regarding KPMG's motion to compel arbitration are therefore moot.

BACKGROUND

The full history of the proceedings underlying this appeal is reported in United States v. Stein, 435 F. Supp. 2d 330 (S.D.N.Y. 2006) (Stein I); United States v. Stein (Stein v. KPMG LLP), 452 F. Supp. 2d 230 (S.D.N.Y. 2006) (Stein II). Familiarity with these opinions is assumed, and we recount here only those facts pertinent to the disposition of the present appeal.

The underlying criminal prosecution is said to be the largest criminal tax case in American history. Stein II, 452 F. Supp. 2d at 237. Nineteen defendants are charged with conspiracy and tax evasion, including the appellees, who are former partners or employees of the accounting firm KPMG. Id. The defendants are alleged to have, inter alia, devised, marketed, and implemented fraudulent tax shelters that caused a tax loss to the United States Treasury of more than $2 billion. In connection with the alleged tax shelters, KPMG entered into a deferred

4

prosecution agreement with the government, agreeing to cooperate fully with the government and to pay $456 million in fines and penalties. Stein I, 435 F. Supp. 2d at 349-50. If KPMG performs its obligations under the agreement, it will escape prosecution. Id.

The particular dispute giving rise to this appeal concerns policies adopted by the Department of Justice in response to highly visible public concerns over the compliance by business firms with federal and state law. See Leonard Orland, The Transformation of Corporate Criminal Law, 1 Brook. J. Corp. Fin. & Com. L. 45 (2006). The policies were established in the so-called "Thompson Memorandum," which set out standards to be followed by federal prosecutors in determining whether to bring criminal prosecutions against firms as well as their agents.[1] See Mem. from Larry D. Thompson, Deputy Attorney General, U.S. Dep't. Of Justice, to Heads of Department Components, United States Attorneys, re: Principles of Federal Prosecution of Business Organizations (Jan. 20, 2003) ("Thompson Mem."), http://www.usdoj.gov/dag/cftf/business_ organizations.pdf. One such standard deemed a firm's voluntary payment of wrongdoing agents' legal expenses a factor favoring prosecution of the firm. Id. at 7-8.

During the course of the investigation, and prior to the indictments in this matter, KPMG negotiated with and paid the

legal fees of some, but not all, of the appellees. Upon indictment, however, KPMG stopped these payments. Stein I, 435 F. Supp. 2d at 350. In Stein I, the district court found that the government had used the threat of prosecution to pressure KPMG into cutting off payment of the appellees' legal fees and thereby violated appellees' Fifth and Sixth Amendment rights to a fair trial and the effective assistance of counsel. Id. at 382. The merits of that ruling are not before us on this appeal.

The district court suggested that the constitutional violation could be rendered harmless if the appellees could successfully force KPMG to re-commence -- or, for some of the appellees, commence -- paying their legal expenses. Id. at 373, 376-78. The court sua sponte instructed the clerk of the district court to open a civil docket number for an expected contract claim by the appellees against KPMG for advancement of their defense costs. Id. at 382. The district court stated that it would "entertain the claims pursuant to its ancillary jurisdiction over this case." Id.

The district court acknowledged a more obvious remedy for the constitutional violations it had found -- dismissal of the indictment -- and explicitly left that possibility open as an incentive for the government to strongarm KPMG to advance appellees' defense costs. Id. at 380. In short, having found that the government violated appellees' constitutional rights by

6

threatening to bring one indictment, the district court sought to remedy the violation by threatening to dismiss another.

Following this invitation, the appellees filed the anticipated complaints against KPMG. In the complaints, fifteen of the sixteen appellees relied primarily on an "implied-in-fact" contract with KPMG based on KPMG's alleged history of paying its employees' legal expenses. The sixteenth appellee, Jeffrey Stein, relied on an express breach of his written separation agreement with KPMG. In response, KPMG moved to dismiss for lack of subject matter jurisdiction and on the merits. It also argued that the case should be referred to arbitration under arbitration agreements between KPMG and the various appellees. The district court denied KPMG's motions in Stein II, 452 F. Supp. 2d 230.

The Stein II opinion contained three principal holdings: (i) a reaffirmation of the court's earlier holding that ancillary jurisdiction existed over the contractual fee dispute between appellees and KPMG; (ii) a rejection of KPMG's argument that the "implied-in-fact" contract claims of all of the appellees, save Stein, were foreclosed by written agreements containing merger clauses; and (iii) a finding that enforcement of any applicable arbitration clause would be against public policy. The court concluded that arbitration might interfere with the district court's ability to ensure a speedy trial, could lead to a dismissal of possibly meritorious criminal charges, would

7

endanger the appellees' rights to a fair trial, and would risk imposing unnecessary costs on taxpayers if the appellees should become indigent. Id. at 238-39.

The opinion closed by setting the trial of appellees' advancement claim for six weeks later, October 17, 2006, following an abbreviated period of limited discovery. Id. at 275. The procedural rules governing the trial were left to the future, the district court noting that "[i]t is not now entirely clear exactly how this will play out." Id. at 274. Although the district court stated that KPMG would have "the protections inherent in the Federal Rules of Civil Procedure," id. at 275, the court elsewhere stated that the advancement claim, although civil in nature, "is a criminal case to which the Civil Rules do not apply," id. at 260. It further expressed its intention to apply the Civil Rules only "to the extent they are consistent with the Criminal Rules." Id. at 269.

On appeal, KPMG argues that the district court lacks subject matter jurisdiction over appellees' advancement claims and also that, if jurisdiction exists, the district court further erred by refusing to compel arbitration.

                              DISCUSSION

a)  Appeal or Mandamus

Appellees argue that we have no appellate jurisdiction to review the district court's assertion of ancillary jurisdiction

8

because the denial of KPMG's motion to dismiss appellees' advancement complaint was an unappealable interlocutory order in a criminal case.  KPMG responds that we have jurisdiction under the Federal Arbitration Act (the "FAA")to review the district court's refusal to compel arbitration, and that we may then exercise pendent jurisdiction over the question of ancillary jurisdiction.

These arguments in turn spawn a tangle of counter- and counter-counter-arguments.  Section 16 of the FAA provides for interlocutory appeal from a refusal to stay an action under Section 3 of the FAA, or of a refusal to compel arbitration under Section 4.  9 U.S.C. § 16(a)(1).  KPMG, however, did not ask for a stay under Section 3 anywhere in its notice of motion to dismiss, and Section 4 applies only to orders by "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under Title 28 . . . ."  9 U.S.C. § 4.  However, the district court does not have jurisdiction over the advancement claim under Title 28.  Moreover, even if KPMG is deemed to have constructively petitioned for a stay under Section 3, an exercise of pendent jurisdiction would require us to find that the issue of ancillary jurisdiction is "'inextricably intertwined' with an issue over which the court properly has appellate jurisdiction," as where "the same specific question underl[ies] both the appealable order

9

and the non-appealable order, or where resolution of the non-appealable order [is] subsidiary to resolution of the appealable order." Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 576 (2d Cir. 2005) (citations omitted).

To undertake pendent jurisdiction, therefore, we would have to find that the issue of ancillary jurisdiction is inextricably intertwined with the denial of the motion to compel arbitration, presumably on the grounds that the district court's reasons for asserting ancillary jurisdiction and for finding that arbitration would be against public policy were the same, i.e., the need to afford an adequate and timely remedy for the constitutional violations. See Stein I at 377 (ancillary proceeding needed "[i]n order to guarantee [appellees'] right to choose their own counsel . . ."); Stein II at 245 (having found the constitutional violations, "the overreaching issue is what to do about it"), and 254 (need to promptly vindicate appellees' Fifth and Sixth Amendment rights are factors rendering arbitration clauses contrary to public policy).

We decline to resolve the question of appellate jurisdiction. We suggested at oral argument that it might be more appropriate to exercise our mandamus power. The parties were invited to file supplemental briefs on the issue, and Judge Kaplan himself filed a submission on the issue.

We have in the past treated an appeal as a petition for

10

leave to file a writ of mandamus. In re Repetitive Stress Injury Litigation, 11 F.3d 368, 373 (2d Cir. 1993); In re Hooker Investments, Inc., 937 F.2d 833, 837 (2d Cir. 1991). However, we have generally done so only after finding a lack of appellate jurisdiction. Repetitive Stress Injury Litigation, 11 F.3d at 373; Hooker Investments, 937 F.2d at 837. There has been criticism of the practice of resorting to mandamus without first resolving the issue of appellate jurisdiction, ACF Indus., Inc. v. EEOC, 439 U.S. 1081, 1085 (1979) (Powell, J., dissenting from denial of certiorari), but there is nevertheless precedent for doing so, see, e.g., In re Globe Newspaper Co., 920 F.2d 88 (1st Cir. 1990); Guam v. United States Dist. Court, 641 F.2d 816 (9th Cir. 1981); Wilk v. Am. Medical Assn., 635 F.2d 1295, 1298 (7th Cir. 1980); see also Wright, Miller & Cooper, 16 Fed. Prac. & Proc. Juris.2d § 3932.1. While the practice of resorting to mandamus only in the absence of jurisdiction may be of value in alerting courts to the danger of allowing mandamus to become a substitute for an appeal and thus to swallow the rule against interlocutory appeals, ACF Indus., 439 U.S. at 1085, the circumstances here fully justify the exercise of mandamus power without deciding whether we have appellate jurisdiction.

In turning to mandamus, we simply recognize that "[t]he traditional use of the writ in the aid of appellate jurisdiction both [at] common law and in the federal courts has been to

11

confine an inferior court to a lawful exercise of its prescribed jurisdiction . . . ."  Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26 (1943).  Because the actions of the district court were well outside its subject matter jurisdiction, our resort to mandamus does not in any way expand the potential use of that writ and avoids our unnecessarily addressing complex jurisdictional issues.

The jurisdictional issues are complex, but largely because, as we explain below, the proceeding challenged on this appeal -- a state law contract action against a non-party within a federal criminal proceeding -- is well outside the subject matter jurisdiction conferred by Congress on the federal courts.  It is hardly surprising, therefore, that there is no statute or body of caselaw that clearly affords or clearly precludes appellate review of the commencement of such a proceeding.  For example, the failure of Congress to mention Title 18 as well as Title 28 in Section 4 of the FAA is not evidence of an intent to preclude interlocutory appeals from orders refusing to compel arbitration in criminal cases.  Rather, it is evidence that Congress did not expect such issues ever to arise in criminal cases.  Indeed, the complexities surrounding our appellate jurisdiction underline the paucity of grounds supporting the district court's assertion of ancillary jurisdiction.

Were we to opine on the various arguments over appellate

12

jurisdiction, we would have to address issues involving the FAA and pendent jurisdiction that arise only because of the happenstances of this unique case. There is no need for a precedent regarding appellate jurisdiction in this context because our issuance of the writ disposes of this matter and renders the existence of future such cases unlikely. However, opining on the jurisdictional issues does risk the making of statements that might be misleading in future cases in a different context. We therefore turn to the mandamus remedy without deciding the jurisdictional issues.

b) The Merits

As discussed above, mandamus is available to confine courts to their designated jurisdiction. Other "touchstones" of mandamus review are "usurpation of power, clear abuse of discretion and the presence of an issue of first impression." Steele v. L.F. Rothschild & Co., Inc., 864 F.2d 1, 4 (2d Cir. 1988) (internal quotation marks omitted). Three conditions must be satisfied before the writ may issue: first, the party seeking relief must have "no other adequate means to attain the relief he desires," second, the petitioner must show that his right to the writ is "clear and indisputable," and third, the issuing court must be satisfied that the writ is appropriate under the circumstances. Cheney v. United States Dist. Court, 542 U.S. 367, 380-81 (2004) (internal quotation marks and citations

13

omitted). The writ is, of course, to be used sparingly. In addition to avoiding its use as a substitute for an appeal, discussed above, "the principal reasons for our reluctance to condone use of the writ [are] the undesirability of making a district court judge a litigant and the inefficiency of piecemeal appellate litigation." Mallard v. United States Dist. Court, 490 U.S. 296, 309 (1989). In the present matter, all of the standard requirements for granting mandamus relief are met, while the reasons underlying the traditional reluctance to resort to the writ are either not present or favor granting the writ.

Appellees argue that KPMG's right to relief is not "clear and indisputable" because the proper scope of ancillary jurisdiction is not well-settled by our caselaw. To be sure, "[t]he boundaries of ancillary jurisdiction are not easily defined and the cases addressing it are hardly a model of clarity." Garcia v. Teitler, 443 F.3d 202, 208 (2d Cir. 2006). However, because ancillary jurisdiction cannot be limitless and still be ancillary, boundaries there must be, and the exercise of ancillary jurisdiction here is clearly outside those boundaries.

As Garcia stated, "ancillary jurisdiction is aimed at enabling a court to administer justice within the scope of its jurisdiction." Id. (internal quotation marks omitted). Ancillary jurisdiction is intended "to permit disposition of claims that are, in varying respects and degrees, factually

14

interdependent by a single court, and . . . to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Id. (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994)).

The most common exercise of ancillary jurisdiction is, probably, to resolve fee disputes between a party and its attorney arising in litigation in which the attorney represented the party. See, e.g., Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc., 863 F.2d 251 (2d Cir. 1988); Novinger v. E.I. DuPont de Nemours & Co., Inc., 809 F.2d 212 (3d Cir. 1987). In Garcia, for example, we upheld the exercise of ancillary jurisdiction to compel an attorney to return a retainer obtained to represent a party in the underlying litigation after the district court had ordered the attorney to withdraw as counsel because of misconduct. Garcia, 443 F.3d at 208, 211-12. Exercise of ancillary jurisdiction over a fee dispute between a party and an attorney functioning as an officer of the court in litigation over which a court has jurisdiction is, however, a world away from the exercise of ancillary jurisdiction in a criminal proceeding to adjudicate a contract dispute between the defendants and a non-party former employer.

When a court undertakes to resolve claims arising from a relationship between a party to an action and the party's

15

attorney in that action and involving the attorney's conduct of that litigation, the parties to the ancillary proceeding are already before the court as a litigant and officer of the court; the relevant facts are generally more accessible to that court than to another; and the ability of the court to conduct and dispose of the underlying litigation may turn on, or at least be greatly facilitated by, resolution of the issues raised in the ancillary proceeding.  However, when a non-party to the primary proceeding is sought to be joined as a defendant in the ancillary proceeding, the need for the ancillary proceeding and the efficiencies provided by it must be both sufficiently great to outweigh the prejudice to the non-party and to be consistent with the limited jurisdiction of federal courts.

An ancillary proceeding may subject the non-party to what may be a different forum and different procedural or even substantive rules than would normally be involved in disposing of the claim at issue.  In addition, the assertion of ancillary jurisdiction over matters that are otherwise outside the jurisdiction conferred by the Constitution and the Congress can be justified only by compelling needs arising in the exercise of the jurisdiction that is conferred.  While we do not exclude the possibility of a legitimate ancillary proceeding involving a non-party to the primary litigation, we believe that the requisite compelling circumstances will be rare, as the need for such a

16

proceeding generally will be far less pressing than in cases involving parties already before the court.[2]

In the present matter, the prejudice to KPMG is clear, and the need for the ancillary proceeding is entirely speculative. The claims to be resolved in the ancillary proceeding sound in contract, i.e. appellees claim that KPMG impliedly -- in one case expressly -- promised to pay their expenses in defending the present criminal charges. The prejudice to KPMG in having these claims resolved in a proceeding ancillary to a criminal prosecution in the Southern District of New York is clear. At stake are garden variety state law claims, albeit for large sums. KPMG believed that contractual disputes between it and the appellees would be resolved by arbitration. Instead, KPMG is faced with a federal trial of more than a dozen individuals' multi-million dollar "implied-in-fact" contract claims. Moreover, because such a proceeding is governed by no express statutory authority, the district court has indicated its intention to apply to this expedited undertaking an ad hoc mix of the criminal and civil rules of procedure determined on the fly, as it were. See Stein II, 452 F. Supp. 2d at 274-75. The resolution of the contract claims against KPMG is thus to occur in an entirely sui generis proceeding even though it may require the scrutinizing of decades of KPMG's conduct, determining the states of mind of dozens of individuals, applying the findings

17

from those inquiries to the particular circumstances of each appellee, and resolving multiple questions of the law of several states. Waiting to appeal from a final judgment in this sort of proceeding can hardly be described as an "adequate means" of relief eliminating the need for mandamus. See Cheney, 542 U.S. at 380 (internal quotation marks omitted). This is especially the case where, as here, KPMG may have a contractual right to resolve these questions through arbitration and avoid such a proceeding altogether, as the FAA's provision for interlocutory appeals from refusals to stay an action or compel arbitration was intended precisely to avoid such outcomes.

The need for the particular ancillary proceeding is also far less pressing than contemplated by the district court. First, the interrelationship of the factual issues underlying the finding of constitutional violations and the asserted contract claims is marginal. The Fifth and Sixth Amendment violations were found to be the government's implementation of the policy stated in the Thompson Memorandum with regard to decisions to indict or not indict firms. Stein I, 435 F. Supp. 2d at 367. One aspect of that policy was to take into account whether the firm was voluntarily paying the legal expenses of members or employees who had been indicted, see Thompson Mem. at 7-8, a factor deemed to favor indictment under the Thompson Memorandum. Id. That document gave no such weight to payments required by

18

contract. As a result, the constitutional issues before the district court went solely to what pressure the government put on KPMG not to pay fees voluntarily and to what KPMG's response was. See Stein I, 435 F. Supp. 2d at 366, 343-49. A trial of claims to expenses based on contract -- especially implied contract -- will go over very different factual ground.

Second, while the ancillary proceeding is a major undertaking, its contribution to the efficient conclusion of the criminal proceeding is entirely speculative. Even if the holding that the government violated the Fifth and Sixth Amendments is correct -- an issue on which we express no opinion -- the ancillary proceeding will provide a "remedy" only if KPMG loses, hardly a foregone conclusion on the present record.[3] But even if there are constitutional violations and even if KPMG was contractually obligated to pay appellees' expenses, the ancillary proceeding is not an indispensable remedy and may not even constitute a full remedy. Dismissal of an indictment for Fifth and Sixth Amendment violations is always an available remedy. Moreover, if it violates the Fifth and Sixth Amendments for the government to coerce an employer to decline to pay expenses on a voluntary basis, it may well be a similar violation to coerce the employer to breach a contract to pay such expenses, thereby compelling the employees to pay the substantial costs of enforcing the contract in a civil action. Either way, the

19

government has used coercion to raise the costs of the defendants to obtain counsel of their own choosing. The ancillary proceeding may not, therefore, render any constitutional violation harmless.

Third, even if there were constitutional violations and even if KMPG is contractually obligated to advance appellees' attorneys' fees and costs, creating an ancillary proceeding to enforce that obligation was not the proper remedy. If the government's coercion of KMPG to withhold the advancement of fees to its employees' counsel constitutes a substantive due process violation, or has deprived appellees of their qualified right to counsel of choice, more direct (and far less cumbersome) remedies are available. Assuming the cognizability of a substantive due process claim and its merit here, dismissal of the indictment is the proper remedy. As for the Sixth Amendment deprivation, if it turns out that the government's conduct separates appellees from their counsel of choice (an event that has not yet occurred), appellees may seek relief on appeal if they are convicted. We do not mean to exclude the possibility of other forms of relief. If, for example, a Sixth Amendment violation is the result of ongoing government conduct, the district court of course may order the cessation of such conduct. Having said that, we hold, however, that the remedies available to the district court in the circumstances presented here did not include its novel exercise

of ancillary jurisdiction.  The "summary advancement proceeding," id. at 381, it created may have been intended only as a vehicle for the government and KPMG to act on their "incentives" to somehow get appellees' counsel funded and thereby "avoid any risk of dismissal of [the indictment of the appellees] or other unpalatable relief."  Stein I at 380.  Or, as Stein II suggests, it might also have been envisioned as an uncharted hybrid legal proceeding for the expeditious resolution of numerous high-dollar and potentially complex contract claims.  Either way, it was not an available remedy for either constitutional violation.

Finally, on the present record, a proceeding ancillary to a criminal prosecution was not necessary either to avoid perceived deficiencies in ordinary civil contract actions to enforce the alleged advancement contracts or to remove some barrier to the appellees' bringing of such actions.  The fee issue has been known since the criminal investigation began and, unlike the situation in Weissman, see Note 2 supra, did not suddenly arise at an awkward period in the case.  Many of the appellees were in negotiation with KPMG during the investigation period.  Some sixteen months before the indictment, most of the appellees signed a letter that clearly indicated their knowledge of KPMG's intent not to pay post-indictment fees and could -- arguably must -- be read as a waiver of any right to such fees.  Stein II, 452 F. Supp. 2d at 240-41.  Nevertheless, appellees took none of the

21

available steps to enforce their alleged contracts with KPMG until well after the indictment when the district court raised the possibility of an ancillary proceeding and indicated its willingness to exercise jurisdiction over it.

The traditional factors weighing against mandamus -- the undesirability of casting a judge as a litigant and the desirability of avoiding piecemeal appeals -- also weigh in favor of mandamus in this case. The district judge is not a party, and, by granting the writ, we avoid an unnecessary, potentially costly, and time-consuming procedure that would certainly be vacated on appeal. The district court has acknowledged that the proceedings before him "would be facilitated by prompt review of the merits of the challenged order." The same considerations -- the magnitude and importance of the ongoing criminal proceedings -- also argue for swift review to avoid further delay of the underlying criminal proceedings. For all of the foregoing reasons, the three requirements of <u>Cheney v. United States Dist. Court</u>, 542 U.S. 367, 380-81 (2004), are met here.

CONCLUSION

We treat the appeal as a petition for writ of mandamus. We grant the petition, vacate the orders below to the extent that they find jurisdiction over the complaint against KPMG and dismiss appellees' complaint against KPMG.

FOOTNOTES

1. The Thompson Memorandum has been superseded by the "McNulty Memorandum." See Mem. From Paul J. McNulty, Deputy Attorney General, U.S. Dep't of Justice, to Heads of Department Components, United States Attorneys, re: Principles of Federal Prosecution of Business Organizations, http://www.usdoj.gov/dag/speech/2006/mcnulty_memo.pdf.

2. In United States v. Weissman, 1997 WL 334966 (S.D.N.Y. June 16, 1997), a district court asserted ancillary jurisdiction over a dispute concerning the advancement of legal fees by a former employer to a criminal defendant. In Weissman, a former Empire Blue Cross/Blue Shield executive had his defense costs advanced pursuant to a corporate by-law stipulating that the company would cover all legal costs unless "a judgment or other final adjudication" established that the officer had acted in bad faith or used deliberate dishonesty. Id. at *1. After the jury convicted the former executive, but prior to sentencing, the company stopped paying legal expenses. Id. at *2. The executive, however, argued that he was entitled to coverage of expenses through post-conviction motions and sentencing. Id. at *11. The question addressed in the ancillary proceeding was the legal question of "whether a jury's guilty verdict constitutes a

23

'final adjudication.'" Id. The court acknowledged that it could find no other example of a court in a criminal case exercising ancillary jurisdiction over an employer in an advancement case. Id. at *5. The Weissman court further noted that the "argument that complex questions of state law are implicated" in the dispute was the "most powerful challenge" to the court's ancillary jurisdiction. Id. at *8. We need intimate no view on the merits of Weissman because it is somewhat different from the present matter. On the one hand, in Weissman, the issue of the employer refusing to advance expenses arose at a time when no disposition of the issue could be reasonably obtained in another forum. On the other hand, there was no perceived Sixth Amendment violation by the government in need of a remedy.

3. That KPMG should lose on the merits is far from certain. KPMG's alleged "uniform practice," Stein I, 435 F. Supp. 2d at 356, of paying the legal fees for indicted employees and partners -- seemingly an indispensable element of an "implied-in-fact" contract -- appears to consist of a single instance in which KPMG paid the legal fees of two partners indicted and convicted in a 1974 criminal case, id. at 340. In addition, as a condition of having their pre-indictment legal fees paid by KPMG, most of the appellees signed fee letters acknowledging that KPMG would not pay post-indictment fees and -- on the most straight-forward

reading -- waiving any right to such fees. <u>Stein II</u>, 452 F. Supp. 2d at 240-41. What is more, when the appellees moved to dismiss the indictment on Sixth Amendment grounds, they took the position that the payment of legal fees was a matter of KPMG's freedom of choice, stipulating with the government that "it had been the longstanding <u>voluntary</u> practice of KPMG to advance and pay legal fees . . . ." <u>Stein I</u>, 435 F. Supp. 2d at 340 (emphasis added). Arguably, the appellees would be estopped from now arguing that KPMG had a contractual obligation -- implied or otherwise -- to pay post-indictment legal fees. Finally, we note that some of the district court's "public policy" reasons for refusing to compel arbitration -- i.e., that arbitration would interfere with the appellees' rights to counsel of their choice and risk the need for the government to provide counsel to indigent defendants -- seem to assume that KPMG would win any arbitration proceeding.