**11-1233-cv**
**RICHARD WARE LEVITT, ESQ. V. DAVID H. BROOKS**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Submitted: February 7, 2012    Decided: February 14, 2012)

Docket No. 11-1233

_____

RICHARD WARE LEVITT, ESQ.,

*Plaintiff-Appellee*,

–v.–

DAVID H. BROOKS,

*Defendant-Appellant*.

_____

Before:

PARKER, WESLEY, LOHIER, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*), entered on March 15, 2011, granting Plaintiff-Appellee's motion to compel Defendant-Appellant's payment of outstanding legal fees owed to Plaintiff-Appellee for representation he provided to Defendant-Appellant in a federal criminal proceeding.

AFFIRMED.

_____

ANDREW J. GOODMAN, Garvey Schubert Barer, New York, NY, *for Plaintiff-Appellant*

DEAN M. SOLOMON (Richard Ware Levitt, *on the brief*), Levitt & Kaizer, New York, NY., *for Defendant-Appellant*.

PER CURIAM:

Appellant David H. Brooks appeals from a judgment of the district court granting Richard Ware Levitt's motion to compel outstanding attorneys' fees owed to Levitt by Brooks in connection with Levitt's representation of Brooks in a federal criminal proceeding. We hold that ancillary jurisdiction existed over the fee dispute and that the district court did not abuse its discretion in exercising that jurisdiction. We also hold that Brooks forfeited many of the issues he raises on appeal by not raising them below, and we find no merit in his arguments based on the Constitution. We therefore affirm the district court's March 15, 2011 judgment.

## Background

This appeal arises out of Brooks's retention of Levitt to represent him in connection with charges of securities fraud, insider trading, and other criminal offenses. These charges resulted in an eight-month jury trial, after which

Brooks was found guilty.  According to Levitt, at some point prior to the close of trial, Brooks stopped paying Levitt's bills.  Eventually, Brooks owed Levitt $224,956.16.

In September 2010, subsequent to the jury verdict, Brooks moved for the release of certain restrained assets that the government contended were subject to forfeiture.  In support of that motion, Brooks asserted that he had "depleted all funds available to pay for his ongoing defense," that given the unexpected length of his trial, he had "outstanding bills of approximately $1.5 million," and that he anticipated significant costs for the post-trial forfeiture hearing and other proceedings.  In an attached schedule of outstanding invoices, Brooks acknowledged that he owed Levitt $265,000.  Levitt submitted an affidavit alleging that when he informed Brooks that he would move to withdraw if Brooks did not pay the outstanding fee, Brooks became "belligerent," and "hissed or spit at [Levitt] and screamed" a vulgar remark.  The district court denied Brooks's motion.

Brooks failed to pay Levitt the money and hired two attorneys to assist in his post-trial defense.  As a result, Levitt moved: (1) to withdraw as counsel, and (2) for a

court order remitting to Levitt, from forfeited bail funds, $224,956.16 to satisfy the unpaid fees. Levitt also asked for an accounting of how the bail funds previously released to Brooks for litigation expenses were expended; or, alternatively, that funds seized by the government for forfeiture be released to him to satisfy his unpaid fees. As a final alternative, Levitt asked that the district court exercise its ancillary jurisdiction and enter an order compelling Brooks to pay Levitt.

Brooks opposed Levitt's motion. He did not, however, contest the amount he owed Levitt. Instead, he argued that Levitt's motion to compel payment was premature and prejudicial to his interests. He asserted the following arguments as defenses: (1) Brooks was not attempting to evade his obligation to Levitt and had "acknowledged his debt to Levitt before th[e district c]ourt, and made every attempt to satisfy it;" (2) Levitt should not be permitted to "jump the line" over Brooks's other legal creditors who provided services in connection with his case, or those attorneys and staff who were currently working in anticipation of (or would work on) Brooks's upcoming forfeiture proceedings, sentencing, and appeal; and (3)

Levitt's conduct, in revealing the vulgar remark, violated Rule 1.6 of the New York Rules of Professional Conduct concerning the confidentiality of information.  In March 2011, the district court directed the district clerk to open a new civil docket number concerning the fee dispute. Shortly thereafter, pursuant to its ancillary jurisdiction, the district court granted Levitt's motion to compel payment.

## Discussion

On appeal, Brooks argues that: (1) the district court erred by exercising ancillary jurisdiction over the fee dispute; (2) the district court failed to abide by the Federal Rules of Civil Procedure; (3) the lack of any evidentiary hearing or trial violated his due process rights; and (4) he was deprived of his right to a jury trial.  We find that the district court's exercise of ancillary jurisdiction was proper, that Brooks waived his claims regarding the Federal Rules of Civil Procedure by not raising those issues below, and that his Due Process and jury trial claims are without merit.

**I.    The District Court's Exercise of Ancillary Jurisdiction**[1]

In this case, ancillary jurisdiction existed and the district court did not abuse its discretion in exercising that jurisdiction to resolve the fee dispute between Brooks and Levitt.  "It is well settled that a federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action."  *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 64 (2d Cir. 1991) (internal quotation marks and alteration omitted). Ancillary jurisdiction over fee disputes is equally available in criminal and civil cases.  *Garcia v. Teitler*, 443 F.3d 202, 207 (2d Cir. 2006).

In *Garcia*, we explained that "[a]t its heart, ancillary jurisdiction is aimed at enabling a court to administer justice within the scope of its jurisdiction" and that "[w]ithout the power to deal with issues ancillary or incidental to the main action, courts would be unable to

---

[1]We review questions of a court's subject-matter jurisdiction *de novo*.  *See Bank Of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 436 (2d Cir. 2000).  Once we determine that ancillary jurisdiction exists, we review a district court's exercise of that jurisdiction for abuse of discretion.  *See Joseph Brenner Assocs., Inc. v. Starmaker Entm't, Inc.*, 82 F.3d 55, 58 (2d Cir. 1996).

effectively dispose of the principal case nor do complete justice in the premises." *Id.* at 208 (internal quotation marks omitted). Although *Garcia* dealt with a fee dispute following an attorney's withdrawal after a *Curcio* hearing, *Garcia* should not be viewed as limited to just that situation. Rather, we held that "[i]n order to guarantee a defendant's right to choose his own counsel where, as here, his criminal case is ongoing, and to avoid the possibility of defendants becoming indigent and requiring the appointment of counsel, a district court must be able to exercise ancillary jurisdiction to resolve a fee dispute." *Id.* at 209; *see also Novinger v. E.I. DuPont de Nemours & Co., Inc.*, 809 F.2d 212, 217 (3d Cir. 1987). In *Novinger*, the Third Circuit explained that even though attorneys' fees arrangements are primarily a matter of state law, "the federal forum has a vital interest in those arrangements because they bear directly upon the ability of the court to dispose of cases before it in a fair manner." *Novinger*, 802 F.2d at 217.

Under *Garcia*, ancillary jurisdiction existed over the fee dispute between Levitt and Brooks. *Stein v. KPMG, LLP*, 486 F.3d 753 (2d Cir. 2007), on which Appellant relies, is

not to the contrary. *Stein* distinguished *Garcia* on the basis that *Stein* involved a contract dispute between defendants and their non-party former employer. *Id.* at 760-61. In *Stein*, we emphasized the fact that the fee dispute involved a non-party and explained that:

> While we do not exclude the possibility of a legitimate ancillary proceeding involving a nonparty to the primary litigation, we believe that the requisite compelling circumstances will be rare, as the need for such a proceeding generally will be far less pressing than in cases involving parties already before the court.

*Id.* at 761. Here, the parties to the fee dispute are both involved in the underlying action. This case, therefore, differs from *Stein* and is closer to *Garcia.* Specifically, Brooks put his legal fees in controversy by moving for release of restrained assets for the purpose of paying his legal bills. And the underlying proceedings remained ongoing (albeit post-trial), making defendant's legal fees relevant to the district court's management of its case, specifically its responsibility to ensure defendant does not become indigent and that he has representation throughout the proceedings. Like *Garcia,* ancillary jurisdiction was appropriate because it "enable[d the] court to function successfully, that is, to manage its proceedings, vindicate

its authority, and effectuate its decrees." *Id.* at 760 (internal quotation marks omitted).

Brooks claims that even if ancillary jurisdiction was available, the district court abused its discretion in deciding the fee dispute. We disagree. We have held that several non-exhaustive factors can weigh in favor of exercising ancillary jurisdiction. These include: (1) familiarity with the subject matter of the suit, especially with the amount and quality of work performed by the attorneys; (2) a court's responsibility to protect officers of the court in such matters as fee disputes; (3) the convenience of the parties; and (4) judicial economy. *Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc.*, 863 F.2d 251, 256 (2d Cir. 1988). All of these factors were present here and weighed in favor of the court's exercise of ancillary jurisdiction. Having presided over the criminal proceedings, the district court was undoubtedly the most familiar with the subject matter and the amount and quality of work performed by Levitt. Thus, the court's deciding the fee dispute promoted judicial economy.[2] The court's

---

[2]Brooks's assertion that judicial economy weighed against exercising ancillary jurisdiction because Levitt had commenced a proceeding in state court against Brooks's brother as a guarantor of legal fees is unpersuasive. The district court's resolution of the dispute between Levitt and Brooks did not resolve any issues of liability relating to Brooks's brother, and no

responsibility to officers of the court was also implicated. Moreover, before the court, Brooks acknowledged his debt to Levitt while contesting that it should be paid from funds held by the government.

Brooks asserts that Levitt's alleged violation of New York's Rules of Professional Conduct made the district court's exercise of ancillary jurisdiction an abuse of discretion. We see no basis for such an argument. Furthermore, we disagree with Brooks's contention that Levitt violated the Rules of Professional conduct. *See Matter of Priest v. Hennessy*, 51 N.Y.2d 62, 69 (1980). In *Priest* the New York Court of Appeals held that "[a] communication concerning the fee to be paid has no direct relevance to the legal advice to be given. It is a collateral matter which, unlike communications which relate to the subject matter of the attorney's professional employment, is not privileged." *Id.* Although Rule 6.1 of the Rules of Professional Conduct protects information broader than the attorney-client privilege, it only goes so far as to protect "information gained during or relating to the representation of a client," N.Y. Rules of Prof'l

judicial economy would have been gained by the court refusing to resolve the fee dispute before it.

Conduct R. 1.6(a), and Brooks's remark contained no material *information* beyond the use of profanity directed at counsel. We find no merit in Brooks's claim that ancillary jurisdiction was improper, and we therefore affirm.

**II.  Application of the Federal Rules of Civil Procedure**

Brooks contends that the district court failed to comply with the Federal Rules of Civil Procedure in the civil action because: (1) the court did not require the filing of a complaint and service of process, (2) the absence of any pleadings deprived Brooks of his ability to assert affirmative defenses and counterclaims, and (3) the court did not permit discovery.  Brooks failed to raise any of these arguments in opposition to Levitt's motion (which expressly invoked the district court's ancillary jurisdiction) or alert the district court to any potential issues that warranted the need for discovery.  Thus, they are forfeited.  *See Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006).

To the extent Brooks asserts that the district court "never had jurisdiction" over the fee dispute because there was no filing and service of a complaint, this argument is also forfeited because it relates to personal jurisdiction,

a waiveable defect, and Brooks failed to raise the issue below. *See Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999); *see also Miss. Pub. Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946); *In re DES Litig.*, 7 F.3d 20, 24 (2d Cir. 1993).

**III.      Constitutional Arguments**

Brooks's argument that the district court violated his due process rights is also without merit.  He was not denied a sufficient opportunity to be heard, and in fact filed three responsive memoranda to Levitt's motion, none of which requested (let alone established any need for) a hearing or trial.  *See United States v. Santiago*, 495 F.3d 27, 29-30 (2d Cir. 2007); *cf. Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 354 (2d Cir. 2009); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 303 (1st Cir. 1995).  Furthermore, Brooks failed to contest the amount owed to Levitt or raise any contested factual issues below.  Thus, there were no facts to be tried; his asserted right to a jury trial was not implicated.

**Conclusion**

The district court's judgment of March 15, 2011, granting Plaintiff-Appellee's motion to compel Defendant-Appellant payment of outstanding legal fees owed to Plaintiff-Appellee is hereby AFFIRMED.