# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-3258
_____

United States of America

*Plaintiff - Appellee*

v.

Steven Dornsbach; Kamida, Inc.

*Defendants - Appellants*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 20, 2025
Filed: June 2, 2025
[Unpublished]
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

On March 9, 2022, a grand jury indicted Steven Dornsbach and Kamida, Inc. for conspiring to restrain trade in violation of § 1 of the Sherman Act. *See* 15 U.S.C. § 1. The indictment alleged that the defendants knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by rigging bids for concrete

repair and construction contracts. According to the indictment, the defendants' conduct constituted a *per se* restraint on trade in violation of § 1 of the Sherman Act.

The following day, the Government issued a press release titled "Minnesota Concrete Company and its CEO Indicted for Rigging Bids for Public Contracts." The press release described the nature of the charges against the defendants and the potential penalties resulting from a violation of the Sherman Act. In addition, it included a hyperlink to the indictment, as well as two statements from Government officials. One statement said: "This indictment affirms the division's commitment to safeguarding the integrity of the government procurement process at all levels of government." The other stated: "For years, the defendants allegedly cheated their own communities by conspiring to rig bids on concrete repair and construction contracts for local governments and school districts. . . . Bid rigging is not a victimless crime; it reduces competition and charges taxpayers the difference. This indictment shows that the FBI and our partners are committed to investigating those who try to cheat the system for their own gain."

Prior to trial, the defendants filed a motion to dismiss the indictment. The defendants argued that § 1 of the Sherman Act was unconstitutionally vague and that application of the *per se* rule violated the Fifth and Sixth Amendments to the United States Constitution. The district court[1] denied the motion. Thereafter, the defendants proposed jury instructions which omitted the *per se* rule. The district court rejected those instructions and subsequently instructed the jury on the *per se* rule.

After a seven-day trial, the jury found the defendants not guilty. The district court entered judgments of acquittal on May 12, 2023, which terminated the criminal case. Four days later, the Government added a notation to the top of its press release, which stated: "The defendants in this case, Steven Dornsbach and Kamida Inc., were

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota, sitting as visiting judge in the District of Minnesota.

acquitted by a jury of the charges alleged in the indictment described in the press release below." The Government added the same statement to the top of the hyperlinked indictment. The Government made no other changes to the press release, and it remains publicly available.

On July 10, 2023, the defendants filed a motion for a permanent injunction in the terminated criminal proceeding. The defendants asserted that they continued to suffer reputational harm from the Government's press release because it maintained that they were guilty of the crimes charged. Accordingly, they sought an injunction requiring the Government to remove it. The district court concluded that it lacked subject matter jurisdiction and denied the motion.

On appeal, the defendants contend that the district court erroneously (1) concluded that it lacked subject matter jurisdiction over their motion for a permanent injunction and (2) denied their motion to dismiss the indictment as well as their proposed jury instructions. We review *de novo* the question of subject matter jurisdiction. *United States v. Meyer*, 439 F.3d 855, 859 (8th Cir. 2006).

We first address whether the district court had subject matter jurisdiction over the motion for a permanent injunction. The parties agree that the jurisdictional inquiry turns on whether the district court had ancillary jurisdiction. "[T]he doctrine of ancillary jurisdiction recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *United States v. Afremov*, 611 F.3d 970, 975 (8th Cir. 2010) (internal quotation marks omitted). Federal courts may exercise ancillary jurisdiction in two situations: (1) "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent" and (2) "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994).

-3-

The defendants contend that the first category is met because their motion for a permanent injunction is based on the facts underlying the criminal charges. It is not enough, however, that "certain things are germane both to the ancillary proceeding and to the criminal case." *Afremov*, 611 F.3d at 975-76. Rather, a defendant must offer a "plausible argument for finding that the *claim* raised in his motion is factually or logically interdependent with any of the criminal charges against" him. *Id.* at 976. Here, the motion for a permanent injunction invokes a legal theory—defamation—that is distinct from the underlying criminal proceeding. A determination as to whether the Government defamed the defendants through a press release on its website would not affect the resolution of the criminal proceeding, which turned on whether the defendants violated the Sherman Act. *See id.* (noting that ancillary jurisdiction was not appropriate where resolution of the ancillary action would "not affect the final judgment entered in the criminal case"); *see also Peacock v. Thomas*, 516 U.S. 349, 358 (1996) (cautioning "against the exercise of jurisdiction over proceedings . . . where the relief sought is of a different kind or on a different principle than that of the prior decree" (internal quotation marks and alteration omitted)). Indeed, the criminal case had already been terminated for two months before the defendants filed their motion for a permanent injunction. The defendants' motion is therefore not factually interdependent with the underlying criminal proceeding, and the first category is not met.

As to the second category, the defendants assert that removal of the press release is necessary to vindicate the district court's judgments of acquittal. The defendants assert that the acquittals have been "rendered meaningless" before "the general public" because the general public will read the press release and "condemn Dornsbach and Kamida as guilty." To the contrary, the press release states clearly at the top that the defendants were acquitted. It nowhere states that the defendants actually committed the crimes or that they were found guilty. We therefore conclude that the district court did not err in concluding that it lacked ancillary jurisdiction. *See Meyer*, 439 F.3d at 859-62 (concluding that federal courts lack ancillary jurisdiction over motions to expunge criminal records based solely on equitable grounds).

We next address the defendants' contention that the district court erred in denying their motion to dismiss the indictment, as well as their proposed jury instructions.  It is well established that "[o]nly one injured by the judgment sought to be reviewed can appeal."  *Parr v. United States*, 351 U.S. 513, 516 (1956).  Dornsbach and Kamida, Inc. were acquitted, so they are not "injured" parties that can appeal the district court's pretrial rulings.  *See id.* at 517.

Accordingly, we affirm the judgment of the district court.

_____